PEDRO A. OTERO FERNÁNDEZ, apelante, *v.* ALGUACIL TRIBUNAL SUPERIOR, SALA DE SAN JUAN, ETC., apelado.

*Números:* O-85-433, *Resueltos:* 17 de diciembre de 1985
CE-85-691

---

*Luis A. Amorós,* abogado del apelante; *Maricarmen Ramos de Szendrey,* abogada de Carmen M. Torres Rivera.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Con fecha 15 de noviembre de 1985 en los casos de autos emitimos dos resoluciones para que la parte apelante mostrara causa por la cual no se deberían desestimar las apelaciones por frívolas. Por entrañar estos recursos cuestiones de derecho comunes, los hemos consolidado.

La parte apelante ha comparecido y luego de analizar su comparecencia, los escritos de apelación, apéndices y los autos originales en los casos *Carmen Milagros Torres Rivera* v. *Pedro Otero Fernández* (Civil Núm. RF-84-4627) sobre divorcio (trato cruel); *Pedro A. Otero Fernández* v. *Alguacil Tribunal Superior, Sala de San Juan* (Civil Núm. HC 85-22) sobre hábeas corpus, y *Pedro A. Otero Fernández* v. *Alguacil Tribunal Superior, Sala de San Juan* (Civil Núm. HC 85-49) sobre hábeas corpus, estamos en posición de decidir y así procedemos a hacerlo.

La señora Torres Rivera acudió por primera vez al tribunal a solicitar pensión alimenticia para sus hijos menores el 23 de noviembre de 1984. En esa ocasión presentó demanda de divorcio y solicitó alimentos *pendente lite*. Luego de varias suspensiones se logró un acuerdo [1] entre las partes que fue aprobado por el tribunal el 26 de diciembre. Este acuerdo comenzó a regir el 1ro de enero de 1985. Apenas diecisiete (17) días después de que entrara en vigor, el demandado solicitó su modificación. Esta petición fue prontamente denegada por el tribunal. La primera vista de desacato se celebró tres meses y medio más tarde. El demandado aún no había cumplido con lo acordado, [2] a pesar de que la demandante había solicitado el auxilio del tribunal en tres ocasiones distintas y éste le había brindado la oportunidad de cumplir con su obligación sin necesidad de recurrir al remedio extremo del desacato.

## I

Esa vista y la determinación del tribunal, en la que encontró al demandado licenciado Otero Fernández incurso en desacato, fue lo que motivó el primer recurso de hábeas corpus (HC 85-22) presentado el 2 de mayo de 1985. Luego de la celebración de varias vistas, [3] el tribunal declaró el recurso sin lugar.

El único fundamento aducido en esta primera petición fue que al licenciado Otero Fernández se le había privado de su derecho constitucional a ser oído mediante vista antes de orde-

---

[1] Durante esta etapa del procedimiento el demandado se representaba a sí mismo.

[2] De los récords del tribunal surgió que éste no había cumplido con los términos de la resolución sobre alimentos que, entre otras cosas, le exigía depositar mensualmente la suma de dos mil dólares ($2,000) en la Unidad de Alimentos del Tribunal.

[3] Las vistas se celebraron las días 24 y 28 de mayo, y 26 de junio.

narse su detención y encarcelamiento. Veamos en qué consistió esa supuesta privación. (⁴)

La solicitud de la señora Torres Rivera para que se citara al licenciado Otero Fernández para mostrar causa por la cual no debería ser encontrado incurso en desacato por incumplimiento con su obligación alimenticia se presentó el viernes 12 de abril de 1985 por la mañana. Inmediatamente, el tribunal dictó orden y mandamiento en la que citó al demandado a comparecer el 17 de abril a las 9:00 de la mañana para mostrar causa. Esta citación fue diligenciada ese mismo día por la noche. El licenciado Otero Fernández alega que debido a que el 16 de abril era día feriado por conmemorarse oficialmente el natalicio de José de Diego, tuvo solamente un día para hacer todas las gestiones necesarias para poder cumplir con la citación. El día de la vista compareció a sala por un corto lapso, habló con el alguacil de sala, le explicó que tenía otros señalamientos en el mismo tribunal "por lo que no podía estar presente en la vista", y luego se ausentó.

 Bajo estas circunstancias no podemos concluir que al licenciado Otero Fernández se le privó de su derecho constitucional a ser oído. El tribunal, en atención a nuestro llamado "para que con creatividad e imaginación, [los tribunales de instancia] intenten solucionar con mayor prontitud y prioridad estas contiendas", *Guadalupe Viera* v. *Morell*, 115 D.P.R. 4 (1983), acogió con celeridad el justo reclamo de la señora Torres Rivera, señaló la vista del desacato con prontitud y se aseguró de que el licenciado Otero Fernández fuese notificado el mismo día.

La premura del tribunal al señalar la vista estuvo plenamente justificada, ante la inaceptable conducta del demandado licenciado Otero Fernández reflejada por su total desa-

---

(⁴) Esto surge de las distintas mociones presentadas por el propio licenciado Otero Fernández, de las minutas de las distintas vistas, del escrito de apelación, del apéndice y de su comparecencia ante este Tribunal.

tención a las órdenes de dicho foro, que le requerían cumplir con la resolución sobre los alimentos de los menores([5]) y el carácter de urgencia que éstos revisten. Además, el licenciado Otero Fernández se cruzó de brazos, no le advirtió al tribunal con anterioridad a la vista que, debido a previos señalamientos, tendría problemas para cumplir con la citación. El lunes 15 de abril era día laborable y bien pudo el licenciado Otero Fernández presentar una moción para informarle al tribunal su problema y solicitar que la vista se celebrase a otra hora o por la tarde.

■ El azaroso trayecto procesal seguido por esta solicitud de alimentos llevó a que la controversia se trasladara a un caso independiente de hábeas corpus.([6]) De esta forma pretendió el demandado licenciado Otero Fernández revisar colateralmente las actuaciones del tribunal en el procedimiento de desacato.

■ El propósito del hábeas corpus, conocido como el Gran Recurso, es la protección de los derechos fundamentales. Es el recurso por excelencia para la reivindicación de la prisión o privación ilegal de la libertad. 34 L.P.R.A. sec. 1741. "La encuesta que sobre la legalidad de la prisión o detención

---

([5]) Este hecho aparecía de los récords de la Unidad de Alimentos del tribunal y fue alegado por la demandante en su solicitud.

([6]) En la vista de desacato celebrada el 17 de abril de 1985 se encontró al demandado Otero Fernández incurso en desacato y se ordenó su arresto y encarcelamiento. Sin embargo, el licenciado Otero Fernández no llegó a ser encarcelado. Ese mismo día el licenciado Luis A. Amorós en representación del demandado compareció al tribunal acompañado del hermano de éste y produjo un cheque por cinco mil dólares ($5,000). El hermano del licenciado Otero Fernández se comprometió además a conseguir la suma restante de tres mil dólares ($3,000) antes del medio día del 19 de abril de 1985. Mediante Resolución y Orden de 17 de abril de 1985 el tribunal dejó sin efecto la orden de arresto y encarcelamiento y expresamente le apercibió al licenciado Otero Fernández que el incumplimiento del pago de los restantes tres mil dólares ($3,000) se consideraría "desacato al Tribunal, por lo que, a petición de la parte demandante, el Tribunal pod[ría] ordenar su arresto [e] ... ingreso sin más citarle ni oírle".

lleva a cabo el juez en la vista del hábeas corpus se circunscribe a asegurarse de que se han seguido y observado trámites procesales correctos, ajustados al debido proceso de ley." *Rabell* v. *Alcaides Cárceles de P.R.*, 104 D.P.R. 96, 101 (1975). En el caso de autos el recurso de hábeas corpus se usó para cuestionar una supuesta violación del derecho constitucional a ser oído antes de privársele de su libertad. Por lo tanto, en el recurso presentado por el licenciado Otero Fernández no se podía relitigar o cuestionar la validez de la determinación que lo encontró incurso en desacato y fijó la cantidad adeudada. La vista de hábeas corpus tenía que circunscribirse a determinar si el tribunal erró al no suspender la vista de desacato y si al así actuar le violó al peticionario su derecho constitucional a ser oído.

Es norma de derecho generalmente reconocida que el método normal y tradicional para corregir los errores cometidos por los tribunales de instancia es el recurso apelativo. Desde los albores de nuestra jurisprudencia hemos adoptado la regla general de que, salvo "circunstancias excepcionales", no se concederá el auto de hábeas corpus en sustitución de la revisión apelativa. *Ex Parte Mauleón*, 4 D.P.R. 123, 128 (1903); *Ex Parte Bird*, 5 D.P.R. 247 (1904); *Ex Parte Díaz (a) Martillo*, 7 D.P.R. 153 (1904); *Ex Parte Cintrón*, 5 D.P.R. 90 (1904); *Ex Parte Rosa*, 8 D.P.R. 132 (1905), y desde entonces nos hemos adherido a ella en forma consistente, *Marrero Laffosse* v. *Márshal, Tribl. Superior*, 89 D.P.R. 564, 568 (1963); *Chamberlain* v. *Delgado*, 82 D.P.R. 296, 301–302 (1961). En igual sentido se ha pronunciado el Tribunal Supremo de Estados Unidos. *Sunal* v. *Large*, 332 U.S. 174, 175–177 (1946).

Al determinar en qué consisten estas "circunstancias excepcionales", los tribunales deberán tomar en consideración, además de la disponibilidad o no de un remedio efectivo para revisar en alzada el error y evitar la continuación de la detención ilegal, factores tales como si de las alegaciones en la peti-

ción, con referencia a hechos específicos, surge: (1) que ha habido una patente violación a algún derecho constitucional fundamental; (2) que no ha habido una renuncia válida a ese derecho, y (3) la necesidad de una vista evidenciaria.

Los hechos en el primer caso de hábeas corpus claramente demuestran que no existían las "circunstancias excepcionales" que justificarían el uso de este recurso extraordinario. Al examinar las alegaciones en la petición de hábeas corpus con especial atención a los hechos específicos allí alegados, llegamos a la conclusión de que dichas alegaciones no configuran una violación a un derecho constitucional fundamental, el derecho a ser oído. Al revisar y analizar los autos en el caso de divorcio encontramos que no era necesaria la celebración de una vista evidenciaria. Los hechos en los cuales se basa la supuesta violación del derecho constitucional a ser oído surgen claramente del récord. Por último, el demandado licenciado Otero Fernández tenía disponibles el recurso de *certiorari* para revisar el supuesto error cometido por el tribunal de instancia y la moción en auxilio de nuestra jurisdicción para evitar ser encarcelado mientras decidíamos sobre su expedición. Bajo estas circunstancias el ataque colateral a la determinación del tribunal mediante el uso del recurso de hábeas corpus sólo tuvo el indeseable efecto de atrasar aún más la obtención de los alimentos de los menores, al subvertir la ordenada tramitación del caso, multiplicar los procedimientos y crear una situación de posible fricción entre los jueces de instancia al pretender la revisión colateral de una resolución.

 Aun cuando aceptásemos que el recurso de hábeas corpus estuvo bien utilizado, todavía tendríamos que entrar a determinar si la apelación en este caso es frívola o ha sido interpuesta para dilatar los procedimientos. El hábeas corpus es un procedimiento especial y la ley establece el derecho a apelar de una providencia definitiva de un tribunal o juez al devolverse diligenciado el auto. Ley de 12 de marzo de 1903 (34 L.P.R.A. sec. 1775) ; *Espinosa* v. *Ramírez, Alcaide de*

*Cárcel*, 71 D.P.R. 10 (1950); *Ex parte Delgado*, 12 D.P.R. 269 (1907). La evaluación en los méritos de una apelación en un recurso de hábeas corpus no impide su desestimación por frivolidad. Regla 32 (d) del Reglamento del Tribunal Supremo; *Fournier* v. *González*, 80 D.P.R. 353, 356 (1958).

 Una apelación es frívola si luego de examinar dicha petición, el apéndice y los autos originales, el tribunal determina que carece de todo mérito. Un detallado y minucioso análisis de todos estos documentos y de la comparecencia del apelante nos lleva a concluir que el recurso de apelación interpuesto en el caso del primer hábeas corpus es completamente frívolo, carente de todo mérito. El aseverar en un escrito de apelación que existe una violación de un derecho constitucional, no tiene la virtud de insuflarle a los hechos esta naturaleza.

 El debido proceso de ley, y los derechos que garantiza, es inminentemente de naturaleza pragmática y "[c]omo toda regla habrá de aplicarse con riguroso respeto a los derechos sustanciales de todas las partes afectadas". *Domínguez Talavera* v. *Tribunal Superior*, 102 D.P.R. 423, 428 (1974).

 Los hechos que ya hemos reseñado y discutido, y en los cuales se basa el apelante para alegar que se le violó un derecho constitucional fundamental, sin lugar a dudas no configuran la supuesta violación al derecho constitucional a ser oído, más bien forman parte de un patrón de conducta poco laudable de parte del apelante que refleja una actitud de franco menosprecio hacia las órdenes del tribunal y sus obligaciones para con sus hijos menores. Lo único que efectivamente está logrando este recurso es dilatar los procedimientos. No podemos permitir que en casos de alimentos de menores que están revestidos de alto interés público se haga uso de una apelación totalmente inmeritoria para retrasar el cumplimiento de tan importante obligación.

## II

Pasemos ahora a analizar el segundo incidente de desacato y la subsiguiente petición de hábeas corpus. El 29 de mayo la demandante señora Torres Rivera tuvo una vez más que recurrir al tribunal para solicitar que se obligase al licenciado Otero Fernández a cumplir con su obligación de suministrar alimentos a sus tres hijos menores. La vista se señaló para el 24 de junio. El día de la vista el licenciado Luis Amorós, abogado del licenciado Otero Fernández, compareció y solicitó que se dejara sin efecto el señalamiento debido a que quedó pendiente el "hábeas corpus que [estaba] por resolverse [esa] semana". El tribunal suspendió la vista. Cabe señalar que en la vista del primer hábeas corpus, específicamente se dijo que la posposición de treinta (30) días concedida por el tribunal para dictar la sentencia nada tenía que ver con la pensión alimenticia.

El próximo paso procesal del demandado Otero Fernández fue la presentación de una moción en la que solicitó la "inhibición" del juez que tenía asignado el caso de divorcio, el Hon. Ángel Ramírez Ramírez. Esto logró dilatar aún más la obtención del justo reclamo de los menores. La moción pasó a la consideración de otro juez, quien tras la celebración de una vista, desestimó la misma el 16 de septiembre de 1985.(⁷) Mientras esto sucedía, la solicitud para obligar al cumplimiento de la obligación de pagar los alimentos a los menores quedó prácticamente paralizada. No es hasta después que se resuelve la moción que el tribunal nuevamente señala para el 14 de octubre la vista del segundo desacato. Una vez más, el

---

(⁷) En la Resolución, el Hon. Flavio Cumpiano hizo la siguiente observación: "A nuestro entender, lo que está tratando de hacer [el apelante licenciado Otero Fernández] en este procedimiento de recusación es formular un ataque colateral a las actuaciones y resoluciones judiciales del Juez en este caso."

En relación con esta resolución, el 18 de noviembre de 1985 se presentó recurso de *certiorari* (CE-85-751) ante este Tribunal, el cual fue denegado el 5 de diciembre de 1985.

licenciado Amorós solicitó la suspensión basándose en señalamientos previos. La solicitud fue denegada.

El día de la vista, el demandado Otero Fernández compareció y solicitó que se pospusiera la vista para que su abogado pudiera estar presente. El licenciado Amorós estaba en otra sala del tribunal en la vista en su fondo de otro caso. El tribunal accedió a la posposición.

Al reanudarse los procedimientos esa tarde estaban presentes las partes con sus respectivos abogados. El licenciado Amorós le informó al tribunal que no se encontraba "preparado para entrar a ver la vista", porque había estado preparándose para ver otro caso, que a esos efectos había presentado una moción de suspensión y que hasta esa mañana desconocía que la misma había sido denegada. A pesar de las objeciones del licenciado Amorós, la vista de desacato se celebró. La parte demandante expresó "que a partir de la fecha en que se radicó el recurso [de apelación del hábeas corpus] en el Tribunal Supremo . . . la deuda [era] de $9,200.00 [que incluía] los meses de mayo, junio, julio, agosto, septiembre y octubre de 1985". La demandante utilizó el testimonio del propio licenciado Otero Fernández para probar la falta de pago e incumplimiento. El licenciado Otero Fernández solicitó que se continuara la vista otro día para permitirle así presentar prueba sobre pagos que había hecho a la demandante. El tribunal denegó esta solicitud, lo encontró incurso en desacato y ordenó su arresto y encarcelamiento.

▆▆▆▆ El demandado licenciado Otero Fernández, por ser un abogado de vasta experiencia, tenía que ser consciente de que tenía el deber de satisfacer la pensión alimenticia en la cantidad y forma dispuesta por el tribunal, sin descuentos hechos a su voluntad. Sólo al mediar acuerdo previo y la autorización del tribunal podía descontar del monto de la pensión alimenticia aquellas cantidades de dinero que alegaba gastó

en beneficio de sus hijos menores.([8]) *Guadalupe Viera* v. *Morell,* supra. Aun "[u]na estipulación de las partes sobre los alimentos de los hijos menores, no obliga al tribunal".

---

([8]) En su Moción de Reconsideración presentada el 4 de noviembre de 1985 el demandado licenciado Otero Fernández indica específicamente que de "haber permitido [el Tribunal] que [él] ofreciera su prueba, se hubiese percatado de que el demandado había satisfecho las siguientes sumas de dinero:

"1. Pagó $800.00 dólares a su hija Damaris para proseguir sus estudios. (Giros 36333992823-3633123382-36331263393.)

"2. Pagó $2,100.00 dólares de matrícula [por] su hijo Pedro el día 8 de octubre de 1985, en el Colegio San Ignacio.

"3. Pagó $180.00 [por] su hija Wally el día 8 de octubre de 1985, al Colegio Alejandrino.

"4. Las partes tienen un préstamo con el Banco Santander [el] cual la demandante no ha satisfecho, en [el] cual la demandante es co-deudora y [é]ste mediante el cheque Núm. 24 satisfizo la suma de $2,790.62.

"5. El demandado el día 21 de junio le satisfizo a la demandante la suma de $500.00 dólares mediante cheque Núm. 026.

"6. El demandado satisfizo además . . . $500.00 dólares en efectivo y $300.00 en distintas fechas.

"7. El menor hijo Pedro hizo estudios de verano en el Colegio Roehnseleer, N.Y., el demandado mediante cheque a Malavé Tours satisfizo la suma de $537.00 en pasajes.

"8. Para satisfacer el pago de matrícula de esos estudios, satisfizo la suma de $853.00 dólares.

"9. A su hija Wally se le hizo un cheque para pago de libros y uniformes de $150.00 dólares (cheque Núm. 049).

"10. El demandado para su hija Idalis satisfizo mediante Money Order Núm. 36333992812 la suma de $75.00 dólares.

"11. Con fecha de Sept. 5, de 1985, el demandado satisfizo la suma de $2,821.25 que es la residencia dónde reside la demandante y sus hijos en la actualidad en Viena Núm. 225, College Park, P.R.

"12. El demandado satisfizo la suma de 6 meses de pago de una propiedad de las partes que paga $412.00 dólares mensuales porque estando alquilada fué desocupada desde el mes de febrero de 1985.

"Se le pidió permiso a la demandante para aprovechar la venta de la misma y ésta se negó a dar permiso para venderla, no se pudo hacer la venta y el demandado ha satisfecho los pagos atra[s]ados que suman a $2,400.00 dólares.

"13. El demandado satisfizo además pagos de luz y agua que ascienden a más de $400.00 dólares para la demandante.

"14. Le satisfizo además una partida adicional de $400.00 dólares en efectivo a su casa."

Como podrá observarse estas cantidades, aunque las presumamos correctas, *no* constituyen un cumplimiento de la pensión alimenticia fijada por

*Fernández* v. *Davison,* 80 D.P.R. 253, 257 (1958). La modificación en la cuantía y forma de pago podía lograrla sólo mediante orden del tribunal previa solicitud al efecto.

Después de haber sido encontrado incurso en desacato por segunda vez, el licenciado Otero Fernández procedió de igual manera que en la primera ocasión; presentó un recurso de hábeas corpus. Esta petición corrió la misma suerte que la primera: se denegó. Una vez más presentó un recurso de apelación y alegó, fundándose en los hechos antes reseñados, que se le había violado su derecho constitucional a ser oído.

■■■ Queremos recalcar que la suspensión del señalamiento de una vista es atributo del tribunal, no del abogado, y que al abogado le corresponde el deber de mantenerse informado sobre las decisiones de un tribunal con respecto a los asuntos en los casos en los cuales ostenta la representación de una de las partes. Regla 8.4(b) de las de Procedimiento Civil. El licenciado Amorós no podía meramente confiar en que por el solo hecho de haber presentado una moción de suspensión la vista quedaría automáticamente suspendida. Tenía el deber de prepararse para la vista y no presumir que por haber pre-

---

el tribunal. Como dijéramos en *Guadalupe Viera* v. *Morell,* 115 D.P.R. 4 (1983), si permitiésemos que el alimentante haga descuentos a voluntad, esto "causaría un efecto detrimental en la planificación del presupuesto familiar que debe hacer en este caso la madre para atender adecuada y equitativamente las necesidades de los . . . menores".

También hay que tomar en consideración que además de la cantidad que el licenciado Otero Fernández debía depositar en el tribunal, el acuerdo aprobado requería que pagase directamente otros gastos de los menores. Él debería satisfacer "directamente todos los semestres comenzando en enero de 1985 los pagos de colegios, libros y ropa de [su hija] Idalís Antonia y los boletos aéreos de llegada a Puerto Rico y regreso al Colegio por [lo] menos una vez al año en vacaciones escolares comenzando el 1ro. de junio de 1985. Estos gastos suman alrededor de $7,000.00 anuales. [También tenía que satisfacer] los gastos del colegio donde estudiaba su hijo Pedro A. comenzando en el año escolar 1985–86 que incluye el pago de matrícula, en abril de cada año, las mensualidades por diez meses que se pagan por adelantado en el mes de julio cada año y los libros que se compran en el mes de agosto cada año".

sentado la moción el juez accedería a la suspensión. Además, de la resolución del tribunal que deniega la suspensión aparece que se ordenó que se notificara esta decisión por teléfono, y de la minuta de la vista surge que la misma fue notificada a la secretaria del licenciado Amorós. Este incidente constituye un eslabón más en la cadena procesal dilatoria labrada por el demandado licenciado Otero Fernández para retrasar el cumplimiento de lo dispuesto en la resolución del tribunal sobre el pago de los alimentos a sus tres hijos menores.

Las circunstancias antes reseñadas que surgen de un cuidadoso examen y análisis de los autos originales del caso de divorcio y del segundo hábeas corpus (HC-85-49), del escrito de apelación (CE-85-691), el apéndice y la comparecencia del apelante, claramente demuestran que la apelación de este segundo hábeas corpus es frívola, interpuesta para dilatar los procedimientos. Al igual que en el primer incidente de hábeas corpus, los hechos que hemos reseñado y discutido en modo alguno demuestran que al apelante se le violó algún derecho constitucional fundamental ni, específicamente, su derecho a ser oído. Tal conclusión es totalmente frívola y carente de mérito.

De otra parte, tampoco surge que existan "circunstancias excepcionales" que justifiquen el uso del recurso de hábeas corpus. De los hechos alegados en la segunda petición de hábeas corpus no se desprende, ni remotamente, que exista una violación al derecho constitucional a ser oído. Al igual que en el caso del primer hábeas corpus, la vista evidenciaria no era necesaria. Los hechos surgían del expediente del caso de divorcio. El apelante tenía disponible el recurso de *certiorari* y la moción en auxilio de jurisdicción para revisar el alegado error.

Por todo lo antes expuesto, *se dictará sentencia en la que se desestimen las apelaciones en los casos consolidados.*