EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* JOSÉ FERRER ROSARIO, demandado y recurrente.

*Número:* CE-94-711　　　　*Resuelto:* 6 de junio de 1995

*Gregorio Lima*, abogado del recurrente; *Pedro A. Delgado Hernández, Procurador General, Carlos Lugo Fiol, Procurador General Interino*, y *Grisel Hernández Esteves, Procuradora General Auxiliar*, abogados de El Pueblo.

PER CURIAM: Nos solicita el peticionario que determinemos si el tribunal a quo abusó de su discreción al tomar varias medidas disciplinarias por su incomparecencia a una vista judicial, que ya había sido suspendida en cinco ocasiones previas, a instancias del mismo peticionario.

# I

Es menester examinar de forma detallada el curso de los procedimientos en este caso para aquilatar precisamente la validez del reclamo ante nos.(¹)

El peticionario, Lcdo. Gregorio Lima, representaba a José Ferrer Rosario, quien estaba acusado de violaciones a la Ley de Armas de Puerto Rico. El 16 de marzo de 1994 el acusado renunció por escrito a la vista preliminar. Ese mismo día se señaló una conferencia con antelación al juicio, para el 30 de marzo de 1994, y se reiteró un señalamiento anterior del juicio en su fondo, para el 13 de abril de 1994.

El 30 de marzo, en ocasión de la referida conferencia con antelación al juicio, el licenciado Lima solicitó que se consolidara el caso en cuestión con otros dos por delitos relacionados contra el acusado, que también estaban pendientes, y que se señalaran en conjunto para el 24 de mayo de 1994. El tribunal accedió a esta *primera* petición del licenciado Lima de suspender el juicio pautado para el 13 y 14 de abril y señaló el caso para el 24 de mayo de 1994.

El 19 de abril de 1994, mediante orden administrativa, el Juez Presidente de este Tribunal asignó al Juez Hiram A. Sánchez Martínez este caso. Dicho juez señaló una conferencia con antelación al juicio para el 25 de abril de 1994, pero ésta se transfirió para el 29 de abril de 1994 *debido a la incomparecencia de los abogados de defensa, quienes tenían señalamientos conflictivos en sus calendarios.*

El 29 de abril el licenciado Lima solicitó de nuevo al tribunal la transferencia del señalamiento para juicio de 24 de mayo de 1994, ya que poco antes de esa fecha estaría

---

(¹) Los detalles del devenir procesal en este caso surgen tanto de la Resolución de 14 de octubre del tribunal de instancia, como del alegato del Procurador General, al igual que de otros documentos que constan en autos. En sus escritos ante nos, el recurrente ofrece una versión un tanto distinta de los hechos que habían sido relatados por el tribunal, ya que brinda unas excusas que el peticionario entiende que justifican su conducta. Ello, no obstante, no niega la esencia de los hechos medulares según los relata el tribunal.

viendo otro juicio ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico, el cual probablemente coincidiría con el de Ferrer Rosario. Ésta fue la *segunda suspensión* solicitada por el licenciado Lima. El juicio fue señalado para el 29 de junio de 1994.

Posteriormente, mientras el licenciado Lima participaba como abogado defensor en otro caso junto con el mismo fiscal a cargo del juicio contra el acusado de marras, el primero solicitó verbalmente la *tercera suspensión* del juicio en ese caso. Adujo para ello agotamiento físico y mental. El fiscal se allanó pero solicitó que se estableciera un señalamiento firme para el inicio del caso. Se estipuló el 12 de septiembre de 1994, casi dos meses después, para dar inicio al juicio. El tribunal aprobó la estipulación. No se le informó a éste sobre la posibilidad de que existiesen o pudiesen surgir otros señalamientos conflictivos con el comienzo del juicio.

Seis días antes de la fecha estipulada para el inicio del juicio, el 6 de septiembre de 1994, el licenciado Lima presentó una moción para solicitar la *cuarta suspensión* del juicio, esta vez por quince días. Adujo que estaba participando en un caso criminal que se ventilaba en la corte federal, que comenzaba el 7 de septiembre de 1994. Indicó que, aun cuando creía haber llegado a un entendimiento en torno a una alegación de culpabilidad, para su sorpresa, hacía tres semanas que su cliente había desautorizado cualquier negociación futura y solicitaba la celebración del juicio. Señaló Lima que, ante esta situación, "[e]l tiempo con que contábamos para la preparación en el caso de autos nos lo robó el caso federal" y añadió lo siguiente: "[a]un si lográramos un acuerdo con la fiscalía en el caso federal, el tiempo restante antes de comenzar el proceso de autos no es suficiente; ya no tenemos la est[á]mina de un hombre de 30 años."

En la misma moción, el licenciado Lima indicó que el otro abogado del caso de autos, el Lcdo. Marcelino Ruiz

Corujo, no podía continuar participando en el caso por haber surgido diferencias insalvables entre él y el acusado. El Lcdo. Marcelino Ruiz Corujo presentó una moción de renuncia de representación legal.

Mediante Resolución de 6 de septiembre de 1994, el tribunal concedió al licenciado Lima un plazo que vencería el 8 de septiembre de 1994 a las 5:00 de la tarde, para que acreditara el estado del caso que señalaba como fuente de conflicto en la corte federal. Expresó que de acreditarse que el conflicto de señalamiento era inevitable, entonces, y por vía de señalamiento final, se fijaría la fecha de lunes 3 de octubre de 1994, a las 9:00 de la mañana, para el comienzo del juicio de Ferrer Rosario.

El 7 de septiembre de 1994 Lima presentó una moción en cumplimiento con la resolución anterior del tribunal de instancia. En ésta indicaba que ese mismo día su cliente —en el caso federal— había llegado a un acuerdo con la fiscalía, pero que la corte federal le había ordenado estar disponible en horas laborables para acompañar al imputado al tribunal y asistirlo en la implementación del acuerdo. Añadió que la corte federal dejó al imputado y al abogado citados para comparecer el lunes 12 de septiembre de 1994, cuando se dispondría sobre el acuerdo sometido. El licenciado Lima terminó diciendo que como no podía informar cuándo quedaría relevado de dicho caso, una vez más reiteraba al tribunal que le concediera el término solicitado de quince días laborables para cumplir con su deber de representar al imputado en cuestión.

El 8 de septiembre de 1994 el Tribunal accedió a esta cuarta suspensión y aplazó el inicio del juicio del caso de autos durante tres días, es decir, para el 15 de septiembre de 1994, de manera que el licenciado Lima pudiera completar los trámites del caso federal, *pero le advirtió que el señalamiento del juicio allí dispuesto era final y firme.*

El 14 de septiembre a las 2:24 de la tarde, es decir, la tarde anterior al día señalado para el comienzo del juicio,

el licenciado Lima presentó una moción en la cual solicitaba una *quinta suspensión* del juicio de Ferrer Rosario. Aducía en ella que el 9 de septiembre anterior, mientras conversaba con otro cliente, el licenciado Campoamor Redín, en relación con una querella que éste tenía pendiente ante el Tribunal Supremo de Puerto Rico, se percató de que había omitido anotar el señalamiento de la vista que estaba programada para el 14 y 15 de septiembre de 1994. Indicó que ese 9 de septiembre había sometido un escrito titulado Solicitud de Remedio ante el Comisionado del caso *In re Campoamor Redín,* en el cual expresaba:

> Este conflicto de calendario fue provocado por el abogado que suscribe al no anotar en su calendario el caso de autos. Sabemos que nuestro deber es cumplir con los señalamientos, sin pretender dominar los calendarios del Tribunal. Ante este conflicto no tenemos otra alternativa que solicitar una posposición o que se nos releve de participar en el caso de autos para asistir al caso del Tribunal Superior de Humacao.

El Comisionado denegó ambas peticiones. Lima solicitó entonces del Tribunal que se suspendiera el juicio en el caso de autos y que se señalara para el 3 de octubre de 1994. El Tribunal accedió nuevamente a la solicitud del licenciado Lima y mediante Resolución de 14 de septiembre de 1994 aplazó el inicio del juicio para el lunes 3 de octubre de 1994, fecha solicitada por el licenciado Lima.

No obstante todo lo anterior, el 27 de septiembre de 1994 el licenciado Lima solicitó una *sexta suspensión* del juicio de autos. Esta vez adujo que la vista de la querella contra Campoamor Redín había sido señalada para continuar el 3, 4, 5 y 6 de octubre y pidió un aplazamiento para fines de octubre o para el mes de noviembre. No indicó si le había informado al Comisionado que ya el caso de Ferrer Rosario tenía un señalamiento previo para el 3 de octubre y que dicha fecha había sido propuesta precisamente por el propio abogado.

El 27 de septiembre de 1994, en atención a las numerosas suspensiones que había tenido el caso de autos, el Juez

Hiram Sánchez se comunicó con el Comisionado del caso contra Campoamor Redín. Dialogaron sobre el modo de armonizar el calendario de la vista del caso de Campoamor Redín y el juicio en el caso de Ferrer Rosario. Tomando en cuenta que en el caso de Campoamor Redín había dos abogados adicionales, el Juez Sánchez discutió la posibilidad de que el Comisionado pudiera autorizar al licenciado Lima a comparecer al inicio del juicio de Ferrer Rosario el 3 de octubre, medida que el licenciado Lima le había solicitado antes al Comisionado. El Juez Sánchez también le propuso que si esa alternativa no era plausible, entonces el Comisionado determinara la posibilidad de cambiar la fecha de continuación de la vista del caso de Campoamor Redín; esto en atención a que ya en una ocasión el tribunal había suspendido el juicio de Ferrer Rosario para que el Comisionado pudiera comenzar la vista en el Tribunal Supremo.

Luego de este diálogo con el Comisionado, el tribunal emitió una Resolución de 27 de septiembre de 1994 en la cual hizo constar que el licenciado Campoamor Redín tenía dos abogados adicionales "que muy bien pueden hacerse cargo de representar a dicha persona en el proceso disciplinario ante el Tribunal Supremo". Por tal razón, denegó la moción de suspensión y mantuvo en todo su efecto y vigor el señalamiento del lunes 3 de octubre de 1994.

Llegado el 3 de octubre de 1994, el acusado compareció al juicio pero no su abogado, Lcdo. Gregorio Lima. También compareció el fiscal, el panel de jurado citado exclusivamente para dicho caso y el Lcdo. Luis F. Abreu Elías, quien compareció en sustitución del licenciado Lima y pidió permiso para presentar en corte abierta una moción de éste. En dicha moción el licenciado Lima notificaba al tribunal que, en cuanto a la orden de comparecer el 3 de octubre de 1994 al inicio del juicio, "desafortunadamente, ésta es una orden que no podemos acatar porque faltaría a los Cánones de Ética Profesional si abandonara la defensa del licen-

ciado Campoamor Redín". También indicaba que el Lcdo. Luis F. Abreu Elías lo sustituiría en el juicio de autos, porque tenía el visto bueno del acusado. Terminó informando al tribunal que cumpliría con el señalamiento del caso ante el Tribunal Supremo relativo a Campoamor Redín y que "no compareceré al Tribunal de Humacao según se nos ha ordenado".

De la minuta de la vista celebrada el 3 de octubre de 1994 surge que el licenciado Abreu Elías condicionó la sustitución del licenciado Lima, a que el tribunal le concediera un plazo de 10 días para prepararse. Ante esta situación, el Juez Sánchez ordenó a la Secretaría General del tribunal que pidiera a la empleada encargada del Jurado que notificara el costo de la comparecencia del Jurado de manera que el acusado pagara dichos costos al Estado Libre Asociado de Puerto Rico. Expresó que luego se expediría orden de mostrar causa contra el Lcdo. Gregorio Lima, por la cual no debía encontrársele incurso en desacato por su incomparecencia ese día. El juicio se suspendió para el día siguiente, 4 de octubre de 1994.

Mientras esto sucedía, al inicio de la Vista de 3 de octubre frente al Comisionado en el Tribunal Supremo, el licenciado Lima planteó el conflicto existente con el caso de Ferrer Rosario. El Comisionado José Aponte Jiménez expresó, entonces, lo siguiente sobre el particular:

> El señor Juez se comunicó conmigo en el transcurso de la semana pasada. Dialogamos sobre cuántos son los abogados que componen la representación legal del compañero Campoamor Redín. Me preguntó el Juez que si había algún reparo de mi parte en que excusara al compañero Gregorio Lima de continuar interviniendo en este caso. Y le manifesté al señor Juez que yo no tenía ningún reparo sobre ese particular. Dadas las circunstancias de que él anteriormente había tenido la deferencia de posponer la vista del caso de *El Pueblo de Puerto Rico* contra *José Ferrer*, a los fines de que el compañero Gregorio Lima pudiera honrarnos con su presencia y estar, integrarse al grupo de abogados que representa al compañero Campoamor Redín. De manera que ante esas consideraciones el señor Juez dijo que y manifestó que continuaría con la vista del caso y

aparentemente no iba a excusar la presencia del compañero Gregorio Lima.

.        .        .        .        .        .        .        .

...Sí, le puedo decir al compañero que si escoge pues tener que asistir al Tribunal Superior de Humacao pues queda excusado de tener que comparecer aquí para la continuación de estos procedimientos. Pues de lo contrario estoy seguro de que el compañero Lima está bastante ilustrado en relación con las consecuencias que le podría conllevar el no cumplimiento con la orden del Juez Sánchez, del Tribunal Superior de Humacao.

El licenciado Lima optó por continuar presente en el procedimiento ante el Comisionado.

En horas de la tarde de 3 de octubre, el licenciado Lima pidió al Comisionado que la vista comenzara al otro día a las dos de la tarde "para tener la mañana disponible para tratar de resolver esta situación".

Ante esta petición el Comisionado respondió:

...Pues vamos a recesar hasta mañana. Después, ahora no, después, más tarde. Después que resolvamos todo lo que tenemos pendiente vamos a recesar hasta las dos de la tarde mañana, cosa de que el compañero Gregorio Lima pueda superar cualquier dificultad que tenga en relación con el conflicto de calendario y si es necesario que no pueda comparecer, pues lo excusamos. Ya sabe el compañero ya está excusado.

Inexplicablemente al día siguiente, 4 de octubre, el licenciado Lima no compareció a la vista del caso de su cliente Ferrer Rosario. Tampoco compareció algún otro abogado que lo representara. El acusado y el fiscal estuvieron presentes. Entonces el tribunal se comunicó con el Comisionado. Éste le informó lo acaecido en la Vista de 3 de octubre ante él. El Comisionado le indicó que había excusado al licenciado Lima de comparecer a la vista de Campoamor Redín y que incluso había accedido a la solicitud del licenciado Lima de aplazar la continuación de la Vista de 4 de octubre para las 2:00 de la tarde, para darle tiempo de comparecer ante el Juez Sánchez y resolver ese asunto.

En atención de que ya eran casi las 11:00 de la mañana

y el licenciado Lima no había comparecido a la Sala del Tribunal Superior de Humacao ni se había excusado, y conociendo ya el tribunal que su incomparecencia esa mañana no obedecía a conflicto alguno de señalamiento con el caso *In re Campoamor Redín*, sino que constituía una incomparecencia intencional en abierto desafío a la orden del tribunal. El tribunal expidió una orden dirigida al licenciado Lima para que mostrara causa por la cual no debía ser encontrado incurso en desacato por su incomparecencia al tribunal ese día y le fijó una fianza de $5,000 como condición a su libertad provisional. Ese mismo día el tribunal firmó también otra orden para mostrar causa respecto a la incomparecencia del licenciado Lima al señalamiento del día anterior, 3 de octubre de 1994.

Ambas órdenes de mostrar causa fueron presentadas por separado y requerían del licenciado Lima comparecer ante el tribunal el 14 de octubre de 1994; es decir, 10 días después de haberse expedido éstas. En cuanto al pago de los gastos del Jurado, ordenado verbalmente el día anterior, el tribunal aclaró que la obligación de pagarlos correspondía al licenciado Lima, no al acusado.

El Juez Hiram Sánchez notificó a la Unidad de Arrestos de la Oficina de los Alguaciles, por conducto del Juez Administrador, sobre la orden de arresto contra el licenciado Lima. Se le instruyó a realizar el arresto después de concluida la vista que se celebraba en el Tribunal Supremo, por ser el único lugar en que el licenciado Lima podría ser localizado, con alguna certeza, ese mismo día.

Así las cosas, el licenciado Lima presentó ante nos una Solicitud de *certiorari*, acompañada de una Moción en Auxilio de Jurisdicción, y una segunda Moción en Auxilio de Jurisdicción, el mismo 4 de octubre de 1994 a las 2:25 de la tarde. En la Solicitud de *certiorari* señala como errores el alegado abuso de discreción del tribunal al denegar la suspensión del juicio de Ferrer Rosario; la orden al licenciado Lima de mostrar causa por su incomparecencia a la

Vista de 3 de octubre y la imposición de una sanción económica al acusado equivalente al pago del costo de la comparecencia del Jurado el 3 de octubre.

En la primera Moción en Auxilio, el peticionario solicitó la paralización de los procedimientos. En la segunda Moción en Auxilio nos informaba que el Honorable Juez Hiram Sánchez Martínez había ordenado su arresto ese día (4 de octubre) y nos solicitaba que ordenásemos la paralización de dicha orden.

Mediante Resolución de 4 de octubre paralizamos los procedimientos y expedimos el auto solicitado.

Luego, el 7 de octubre de 1994, emitimos otra resolución en la cual aclaramos que la paralización no se extendía al juicio contra Ferrer Rosario, sino que se limitaba a los incidentes de desacato contra el licenciado Lima.

El 14 de octubre de 1994 el Juez Sánchez sometió por escrito las órdenes dadas en corte abierta el 4 de octubre. En uno de sus escritos modificó lo que había dispuesto sobre el pago por el licenciado Lima de los costos incurridos por la Rama Judicial para la comparecencia del Jurado al señalamiento de 3 de octubre de 1994. En lugar de la orden de pago, el tribunal emitió una orden de mostrar causa por la cual no debía imponerse el pago de dichos costos al licenciado Lima.

El peticionario presentó su alegato ante nos el 10 de enero de 1995, y el Procurador General su informe el 1ro de marzo de 1995. Pasamos a resolver.

II

Nos toca resolver si el tribunal de instancia erró al no suspender por sexta vez el juicio de Ferrer Rosario, como lo pidió el Lcdo. Gregorio Lima; si abusó de su discreción al emitir sendas órdenes de mostrar causa por la cual el licenciado Lima no debía ser encontrado incurso en desacato por su incomparecencia ante el tribunal el 3 y 4 de octubre,

y por la cual no debía imponérsele el pago de los costos de la comparecencia del Jurado el 3 de octubre de 1994.

En esencia, debemos dilucidar si el foro a quo actuó correctamente para mantener el orden y la disciplina en relación con el proceso criminal en cuestión y para atender el conflicto en los señalamientos en que estuvo involucrado el peticionario.

Examinemos, en primer lugar, si el tribunal de instancia erró al no suspender por sexta vez el señalamiento del juicio de Ferrer Rosario.

Como se sabe, "normalmente señalamientos conflictivos y cúmulo de trabajo no son razones para suspender o posponer vistas señaladas con tiempo". *Neri Tirado v. Tribunal Superior*, 104 D.P.R. 429, 433 (1975). Además, el Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece con claridad que será impropio de un abogado asumir una representación profesional cuando no puede prepararse adecuadamente para tal labor, sin que ello apareje demoras irrazonables a su cliente o a la administración de la justicia.

En este caso el tribunal había sido sumamente liberal con el peticionario. Le concedió cinco suspensiones previas para acomodar sus repetidos conflictos en los señalamientos. En la penúltima de estas suspensiones, incluso, se le intimó al peticionario que el caso no podía suspenderse más. El conflicto que dio lugar a la quinta suspensión fue provocado por un error del propio peticionario al no anotar en su calendario la primera vista del caso de Campoamor Redín. Solicitada la sexta suspensión, el propio Juez Sánchez comprobó que el licenciado Lima podía estar presente en la vista judicial y que el Comisionado estaba en ánimo de excusarlo de la vista conflictiva en el caso Campoamor Redín. Por razón de ello, el tribunal no suspendió el juicio señalado para el 3 de octubre, conforme la autoridad que tenía para ello —*Otero Fernández v. Alguacil*, 116 D.P.R. 733 (1985)— y así se le informó al peti-

cionario con suficiente antelación. La incomparecencia del licenciado Lima, pues, a la Vista de 3 de octubre no estaba justificada. Mucho menos justificada estuvo la incomparecencia del día siguiente, 4 de octubre, cuando el Comisionado, en el caso de Campoamor Redín, había recesado la vista en ese caso precisamente para que el licenciado Lima pudiese acudir al tribunal y atender el problema de los señalamientos conflictivos.

Coincidimos con el Procurador General en su apreciación de que el licenciado Lima pretendió imponer, sin contemplaciones, su conveniencia al tribunal y que actuó con imprudencia al no comparecer a las vistas señaladas para el 3 y 4 de octubre. Resolvemos que el foro a quo no erró al negarse a suspender el juicio en cuestión por sexta vez.

### III

Con arreglo a lo señalado antes, es evidente que las órdenes del tribunal al licenciado Lima, para mostrar causa por la cual no debía hallársele incurso en desacato criminal por su incomparecencia el 3 y 4 de octubre, estaban plenamente justificadas y cumplían con la Regla 242 de Procedimiento Criminal de Puerto Rico, 34 L.P.R.A. Ap. II.

En cuanto a la orden de mostrar causa por la cual no deba imponérsele al licenciado Lima el pago de los gastos incurridos por la Rama Judicial por concepto de dietas y millaje del Jurado que compareció a la Vista de 3 de octubre de 1994, resolvemos que ésta también estaba justificada. No tiene razón el peticionario al alegar que ésta es contraria a nuestro dictamen en *Pueblo v. Vega, Jiménez*, 121 D.P.R. 282 (1988). Allí resolvimos que los tribunales no tienen la autoridad para imponerle, *de manera sumaria*, a las partes o a sus abogados *sanciones económicas* por conducta en relación con el calendario de causas criminales que subvierte y atenta contra una eficaz y ordenada administración de los asuntos judiciales.

Nótese, en primer lugar, que no tratamos aquí con una *orden sumaria*. El tribunal en su orden escrita final sobre el particular le brinda al peticionario tiempo suficiente para escucharlo y para que presente sus razones.

■ Más importante aun, como bien señala el Procurador General, no se trata de una *sanción económica*, sino de la imposición de *costas*. El Jurado compareció el 3 de octubre de 1994 porque fue citado para el inicio del juicio de Ferrer Rosario. La suspensión de dicho juicio se debió a la incomparecencia del licenciado Lima. El Estado no tiene responsabilidad por el incumplimiento del licenciado Lima. Podría proceder, pues, la imposición de las costas contempladas en el Art. 271 del Código de Enjuiciamiento Criminal vigente, 34 L.P.R.A. sec. 750, y las Secs. 1 y 33 de la Ley Núm. 11 de 24 de julio de 1952 (34 L.P.R.A. sec. 751 y 4 L.P.R.A. sec. 304), respectivamente.

## IV

Por los fundamentos expuestos, *se deben confirmar las resoluciones recurridas y devolver el caso a instancia para que continúen los procedimientos relativos a las tres órdenes de mostrar causa que están pendientes.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López emitió una opinión disidente y concurrente. El Juez Presidente Señor Andréu García no intervino.

— O —

Opinión disidente y concurrente emitida por el Juez Asociado Señor Rebollo López.

No hay duda de que uno de los mayores problemas que aqueja a la administración de la Justicia en Puerto Rico lo

es las *continuas* suspensiones de las vistas en su fondo de los casos, en específico, de las causas criminales, por los magistrados de instancia. Ello no sólo desemboca en la erogación innecesaria de fondos públicos sino que en la pérdida de tiempo precioso no sólo por los integrantes de la Rama Judicial sino por el ciudadano común y corriente que, habiendo voluntariamente consentido a servir como testigo, se ve obligado, una y otra vez, a comparecer a los tribunales.

Dicha situación, como sabemos, ha tenido la consecuencia indeseable y perjudicial de que muchos de nuestros ciudadanos se nieguen a servir como testigos en los casos precisamente debido a esa situación; actitud que, a pesar de que no puede ser condonada, resulta ser comprensible.

El presente caso es un vivo ejemplo de lo anteriormente expresado. De la relación de hechos que se hace en la decisión mayoritaria que emite el Tribunal surge, con meridiana claridad, la improcedencia de varias de las suspensiones que fueron concedidas por el tribunal de instancia a solicitud de la defensa. Dicho foro judicial no sólo incumplió con su obligación de velar por que las causas ante su consideración se ventilen rápidamente sino que falló malamente en tomar medidas, a tiempo, para conjurar y/o evitar la situación; como, por ejemplo, la advertencia, en tiempo, al acusado de la posible necesidad de la contratación de un abogado adicional que estuviera preparado para ver el caso.

*¿Por qué, entonces, nuestra "inconformidad" con la acción que, final y tardíamente, tomó el tribunal de instancia y con la decisión, confirmatoria sin más de la misma, de este Tribunal?* La contestación resulta ser, sorprendentemente, sencilla.

En *primer* lugar, debe mantenerse presente que, no obstante lo antes expresado, una vez un tribunal declara con lugar la petición de una parte para la suspensión de una vista, dicho foro, al así actuar, *"legitimiza"* dicha solicitud.

Esto es, en el presente caso —ni en ningún otro en el cual un tribunal de instancia haya concedido la suspensión de una, o varias, vistas— realmente *no* se puede hablar de que el foro de instancia actuó "liberalmente" como tampoco de suspensiones "injustificadas e innecesarias".

Por otro lado, objetamos la acción "olímpica" del tribunal de instancia de pretender corregir, *de un día para otro y de un plumazo*, la indeseable situación procesal que dicho foro había permitido, a su "ciencia y paciencia", que se desarrollara; ello en perjuicio de los mejores intereses de una tercera persona —el Ex Juez Campoamor Redín— que no tenía responsabilidad alguna por dicha lamentable situación y que tenía derecho a que el licenciado Lima le asistiera en la querella que se dilucidaba ante el comisionado especial designado por el Tribunal.

No debe perderse de vista que el licenciado Lima estaba participando, *de manera activa*, en la vista que celebraba el comisionado especial en relación con la querella, de índole ético, radicada contra el Ex Juez Campoamor Redín. Es correcto que dicho Ex Magistrado contaba con la asistencia de otros *dos* (2) abogados. *¿Significa ello que la presencia, y asistencia, en dicha vista del licenciado Lima no era indispensable para su cliente?* La sentencia mayoritaria parece sostener —erróneamente, a nuestro juicio— que esa determinación le correspondía hacerla, de manera exclusiva, al comisionado especial que presidía sobre dicha vista.

*No* estamos de acuerdo. En esta clase de situaciones hay otros factores envueltos que, *necesariamente*, tienen que ser considerados. En primer lugar, existe la obligación y el deber ético —impuesto por los Cánones de Ética Profesional— de que, una vez el abogado asume la defensa de un cliente, el mismo no puede abandonar la defensa de éste. En segundo término, está el derecho de ese cliente a ser representado por el abogado, o los abogados, de su selección. En fin, el *mero* hecho de que una persona, en un

caso en particular, cuente con más de un abogado *no* significa —como indirectamente sostiene la mayoría— que uno, o varios, de dichos abogados sean innecesarios para su defensa.

I

Ya en cuanto a los hechos específicos y particulares del caso hoy ante nuestra consideración, somos del criterio que resulta improcedente la determinación que hace este Tribunal, a nivel apelativo y en esta etapa de los procedimientos, a los efectos de que resulta procedente la orden de mostrar causa respecto a la imposición de costas al licenciado Lima en relación con lo acontecido ante el tribunal de instancia el 3 de octubre de 1994.

La solicitud de suspensión del señalamiento de 3 de octubre de 1994 posiblemente fuera la *única* solicitud justificada y procedente de todas las que se concedieron. Ello así ya que la misma se hizo necesaria cuando el asunto ético ventilándose ante este Tribunal, en el cual el licenciado Lima era uno de los abogados del querellado, fue "continuado" para ese día por el comisionado especial que presidía dichos procedimientos; *determinación sobre la cual el Lcdo. Lima no tenía control alguno.* Aun cuando es correcto que hemos resuelto que, *de ordinario,* "señalamientos conflictivos y cúmulo de trabajo no son razones para suspender o posponer vistas señaladas con tiempo",(1) *no puede perderse de vista que un abogado no puede estar en dos (2) sitios a la misma vez.*(2)

Siendo ello así, la determinación que hace la mayoría

---

(1) *Neri Tirado v. Tribunal Superior,* 104 D.P.R. 429, 433 (1975).

(2) La situación en que un magistrado de instancia pretende obligar a un abogado a comparecer en determinado día y hora al tribunal, a pesar del hecho de que dicho abogado tiene otro señalamiento para ese día y hora en otro tribunal, *es una recurrente a nivel de instancia que resulta verdaderamente incomprensible*; situación que demuestra, cuando menos, insensibilidad, imprudencia y temeridad de parte de los magistrados que incurren en la misma.

—a los efectos de que resulta procedente la imposición de costas en el presente caso respecto al señalamiento de 3 de octubre de 1994— *es una errónea en derecho.*

## II

Por otro lado, *concurrimos* con el Tribunal en su determinación de que procede devolver el asunto al foro de instancia para que se dilucide la orden de mostrar causa relativa al posible desacato cometido por el licenciado Lima al no comparecer ante el tribunal de instancia en horas de la mañana de *4* de octubre de 1994; período de tiempo durante el cual *no* tenía conflicto alguno de calendario. Asumimos que alguna excusa, razonable y procedente, expondrá el licenciado Lima, en el momento apropiado, respecto a dicha incomparecencia. De así no exponerla, tendrá el licenciado Lima que, naturalmente, enfrentarse a las consecuencias jurídicas, razonables y procedentes, dimanantes de su conducta.

## III

Por último, consideramos aconsejable que sea otro magistrado el que presida la vista de mostrar causa ante el foro de instancia al recibo del mandato en el caso del epígrafe. Somos del criterio que —dadas las actuaciones del Hon. Juez Hiram Sánchez Martínez en el presente caso hasta este momento[3] y el hecho de que dicho magistrado

[3] *No* es enteramente correcto lo expresado por el Tribunal a los efectos de que el Juez Sánchez Martínez instruyera a los alguaciles del Tribunal Superior de Puerto Rico, Sala de Humacao, "a realizar el arresto *después de* concluida la vista que se celebraba en el Tribunal Supremo, *por ser el único lugar en que el licenciado Lima podría ser localizado, con alguna certeza, ese mismo día".* (Énfasis suplido.) Opinión mayoritaria, pág. 551.

En *primer* lugar, resulta evidente que *no* era necesario e imprescindible que el arresto del mencionado abogado se llevara a cabo en dicho día en las instalaciones e inmediaciones de este Tribunal. El mismo pudo haberse realizado en otro momento y en otro lugar ya que *no* existía urgencia para ello. Lo ordenado por el Juez de instancia, y lo acontecido en dicho día en este Tribunal, produce la impresión de que se

actualmente labora en el Tribunal de Circuito de Apelaciones, donde nos imaginamos tiene ante si cuestiones mucho más importantes que resolver que un mero incidente sobre desacato— la Oficina de Administración de los Tribunales y/o el Juez Administrador de la Región Judicial de Humacao debe asignar a otro magistrado para que entienda en este asunto.

---

quiso hacer un despliegue de fuerza o de poder.

En *segundo* término, y conforme nuestro mejor recuerdo, este Foro se vio en la obligación de ordenar la paralización de los procedimientos *precisamente* debido al hecho de que los mencionados alguaciles pretendieron —*alegadamente por orden del tribunal de instancia*— arrestar al licenciado Lima *mientras se celebraba la vista,* en que éste participaba como abogado, en el Salón de Sesiones de este Tribunal.

Aparte del hecho de que *no* existe justificación para que se interrumpa, por estas razones, ninguna vista ante foro judicial alguno, debe mantenerse bien presente que cuando este Tribunal designa a un comisionado especial para que presida una vista ética, en la cual éste recibe la prueba que tengan a bien presentar las partes con el propósito de hacer unas determinaciones de hecho, dicho comisionado especial actúa en representación de los integrantes del Tribunal; *en otras palabras, es como si dicha vista se celebrara ante el Tribunal Supremo en pleno.*

*Ordenar el arresto inmediato de un abogado, en esas circunstancias, puede ser indicativo de falta de experiencia o ausencia del temperamento judicial necesario para ocupar la posición de juez.*