# 99 DTA 134

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL IV**

ISMAEL E. MARRERO
Querellante-Recurrido

v.

AMERICAN EXPRESS TRAVEL RELATED SERVICES CO., INC.
Querellada-Recurrente

Núm. KLRA-98-00704

San Juan, Puerto Rico, a 23 de marzo de 1999

Panel integrado por su Presidente, Juez Rossy García
y los Jueces González Rivera y Ortiz Carrión

Rossy García, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

El recurso instado en el caso de epígrafe interesa la revisión de una resolución emitida y notificada el 10 de septiembre de 1998 por el Departamento de Asuntos del Consumidor (DACO). Mediante ésta, dicha agencia

administrativa declaró Con Lugar la querella instada por el recurrido, Ismael E. Marrero, acción que se fundó en las disposiciones del Reglamento de prácticas y anuncios engañosos promulgado al respecto por el DACO, ello luego de determinar que la querellada, American Express Travel Related Services Co. Inc., se negó a honrar la oferta anunciada en un panfleto promocional recibido por el querellante, quien satisfizo su prestación al pagar el promocionado viaje en crucero con su tarjeta American Express Gold. Así, al concluir como cuestión de derecho que *"[e]l anuncio que promueve esta querella motivó al querellante a efectuar un pago como lo requiere el anuncio ... con el propósito de recibir lo ofrecido de camarotes de dos (2) categorías superiores pagando precio inferior y que lo prometido no se cumplió por el querellado lo que constituye un anuncio engañoso"*, el DACO ordenó a la American Express a *"devolver[le] al querellante, Sr. Ismael E. Marrero Porrata-Doria la suma de $662.00"*. ■ correspondiente ésta al costo de tal diferencial en categorías. Posteriormente, y en atención a una oportuna moción de reconsideración presentada por el querellante, por voz de María A. Marcano, Directora del Departamento de Adjudicación de Querellas, el DACO modificó su resolución previa a los efectos de hacer constar que *"la diferencia entre lo que se pagó y lo que correspondía es de $900.000, a cuyos efectos enmendó la misma el 3 de octubre 1998."* ■

Inconforme con dicho dictamen, acude ante nos la querellada, aquí recurrente, American Express Travel Related Services (AMEX-TRS) con el recurso que nos ocupa. En el mismo imputa, como fundamento de revocación, que *"el Departamento de Asuntos del Consumidor erró al no desestimar la querella número Q-96-2561 y la (alegada querella] número Q-98-156, cuando ambas querellas ya estaban prescritas"*. ■

De otra parte, señala que dicha agencia administrativa infringió la Ley de Procedimiento Administrativo Uniforme (LPAU) ■ así como el debido proceso de ley, al haber adjudicado la referida alegada querella Q-98-156 sin haberse notificado ésta ni la vista (celebrada el 5 de diciembre de 1997, a la que se hace referencia en la resolución recurrida. ■

Examinado como fue el recurso y en atención a los fundamentos de revocación invocados, concedimos término a la parte recurrida para que expresara su posición respecto a sus méritos. En atención a dicha orden ha comparecido el· DACO mediante escrito en oposición, al cual se suscribió el querellante, por lo que nos encontramos en condición de dictaminar. Luego de un cuidadoso análisis de la totalidad de los documentos que se han hecho formar parte del expediente ante nos, resolvemos que resulta procedente denegar la expedición del auto solicitado.

## I

El Sr. Ismael E. Marrero Porrata-Doria (Sr. Marrero) es tarjetahabiente de American Express, y como tal posee la versión *"oro"* que de la misma expide dicha compañía. Para mediados del mes de febrero de 1996 el señor Marrero recibió, mediante el servicio de correos, copia del folleto Expressions publicado por American Express, en el cual se promocionaba la travesía del 21 de abril de ese año, del barco crucero Splendour of the Seas de la compañía Royal Caribbean Cruise Lines (Royal Caribbean). A tenor con la oferta, los afiliados a la Gold Card que pagaran el costo del viaje con dicha tarjeta recibirían una mejora de dos categorías en sus camarotes y el obsequio de una botella de vino al abordar el referido barco crucero.

Motivado por dicha oferta promocional, el Sr. Marrero procedió a hacer las gestiones para beneficiarse de la referida oferta, interesando así separar y pagar el importe del costo del crucero con su Gold Card. Al inquirir sobre la oferta, su agente de viajes, quien no tenía conocimiento de la misma, le sugirió que llamara a la American Express. Luego de varios intentos que resultaron infructuosos tanto con sus representantes en Puerto Rico como en Miami, el Sr. Marrero optó por seguir la recomendación de la propia American Express de que se comunicara directamente con la Royal Caribbean. Eventualmente, una empleada de esta última compañía le indicó que *"la promoción no aplicaba a su caso"*; que la misma *"aplicaba a los camarotes de menor categoría y*

*precio [a los por él solicitados]"*; y que *"ya esos camarotes [de menor precio] estaban vendidos".* ■

Con estos antecedentes, el Sr. Marrero instó una querella ante el DACO, la cual presentó por correo. Además de exponer los hechos hasta aquí retacionados, el Sr. Marrero alegó que *"escribi[ó] una carta a la American Express Co. en Nueva Jersey y [que] nunca recibió respuesta";* y que, a su juicio, lo anteriormente expuesto constituia *"una promoción y anuncio engañoso de American Express, a tenor con el Reglamento vigente de[l DACO]".* Solicitó, como remedio, que se obligara *"a la querellada a honrar la misma con la correspondiente reducción del precio a tenor con dos categorías menores".* ■

Luego del trámite de rigor al que fue sometido la referida carta, mediante el cual el DACO procedió a asignarle el número de querella Q96-2561 llenando el formulario oficial al respecto --en el que hizo constar la descripción de los hechos pertinentes a la querella según descritos por el Sr. Marrero en su carta-- en o alrededor del 11 de junio dicha agencia procedió a notificar la misma. Así de una lectura del referido formulario surge que, como parte querellada, se nombró a la American Express. Tramitada y notificada como fue dicha querella, la American Express Travel Related Services Company, Inc. (AMEX-TRS) le refirió copia de la misma a sus abogados. A tenor, con fecha de 31 de julio de 1996 estos últimos suscribieron una comunicación al DACO cuyo contenido, y en lo pertinente, transcribimos literalmente a continuación:

*"Me suscribo en representación de nuestro cliente la American Express Travel Related Services Company, Inc. (AMEX-TRS). En días recientes nuestro cliente nos ha referido copia de la querella de referencia con el propósito de que asumamos su representación. Por la presente le informamos que tanto el Lcdo. A. J. Bennazar Zequeira como el suscribiente, estaremos representando a la AMEX-TRS en este asunto. Por tal motivo, respetuosamente solicitamos que se nos notifique de todo escrito que se produzca, ya sea por o ante D.A.C.O., con relación a la presente querella."*

Asimismo surge que solicitaron allí un término de 30 días *"para investigar los hechos alegados en la querella y poder proveer una respuesta u opinión en cuanto a las alegaciones del querellante".* ■

De otra parte, y mientras se desarrollaba tal evento, del expediente ante nos se desprende que el 1ro. de agosto de 1996, el Sr. E. Pagán, investigador del DACO, visitó las oficinas del Lcdo. A. J. Bennazar Zequeira, anunciada representación legal de AMEX-TRS, en cuya ocasión se entrevistó con el Lcdo. Luis Padrón. En su virtud, dicho funcionario rindió un informe a tales efectos en el que se hizo constar que el Lcdo. Padrón se había comprometido a presentar un escrito en contestación a la querella *"dentro de diez (10) días a partir de 9/25/96".* ■

Con este trasfondo, y exhibiendo fecha de 20 de octubre de 1996, la American Express Company (AMEX-CO) sometió un escrito ante el DACO que tituló *"Comparecencia especial solicitando desestimación de querella",* en el cual hacía referencia a una querella alegadamente instada contra ésta. Dicha moción fue suscrita por el Lcdo. Padrón, quien expuso que suscribía la misma en su calidad de representante legal de AMEX-CO. Según surge del contenido de dicho escrito, se alegó allí que la querella Q-96-2561 había sido presentada contra AMEX-CO, la que era *"una corporación foránea que no lleva a cabo negocios ni publica anuncios dentro de esta jurisdicción".* Así, luego de distinguir las características corporativas y definir la esfera de negocios de dicha compañía con relación a la AMEX-TRS, corporación esta última que emite las tarjetas American Express y que lleva a cabo todas aquellas funciones administrativas y de cobro que conlleva el expedir las tarjetas American Express, expuso que *"la presente querella versa sobre un alegado anuncio engañoso, [y que] la misma parece que iría dirigida contra la persona que publicó el anuncio";* *"[q]ue la AMEX-CO no conduce negocios en Puerto Rico, ni es en forma alguna responsable por el contenido o la publicación del alegado anuncio engañoso";* y que *"la presente querella ha sido erróneamente dirigida contra la AMEX-CO".* En su

atención, solicitó del DACO, *"sin someterse voluntariamente a la jurisdicción [de dicho foro]"*, que desestimara la querella interpuesta contra la promovente de la moción, AMEX-CO. Ahora bien, lo que no surge del referido escrito es la razón por la cual la AMEX-CO se sintió aludida por tal querella, la que fuera notificada a la dirección, incuestionada, de la AMEX-TRS, parte contra quien estaba dirigida la querella y quien ya había comparecido ante el DACO mediante comunicación escrita admitiendo haber sido notificada de la querella presentada e informando que *"tanto el Lcdo. A.J. Bennazar Zequeira como el suscribiente, [Lcdo. Luis E. Padrón], estaremos representando a la AMEX-TRS en este asunto"*.

Observamos así que la aquí recurrente, no obstante tal realidad incontrovertida, ignoró, además, la entrevista que sostuvo su representación legal con el investigador del DACO y en la que se comprometió a contestar la querella dentro de un término de 10 días, lo que tampoco cumplió. A tenor, surge del expediente que dicha parte querellada, AMEX-TRS, nunca contestó la querella de epígrafe. Es por ello que claro nos resulta que la referida comparecencia ante él por parte de AMEX-CO, en forma alguna libera a la recurrente, AMEX-TRS, de los efectos de su comparecencia y sumisión a la jurisdicción de dicho foro administrativo, ello mediante su comunicación de 31 de julio de 1997. Menos aún la releva de los efectos de las notificaciones de que fue objeto durante el trámite de la querella que culminó con el dictamen recurrido, y de los que no quede desligarse, los que reseñamos a continuación.

Surge de los documentos que obran en autos que, el 10 de febrero de 1997, la Secretaría Auxiliar de Querellas e Investigaciones del DACO, por voz de la señora Awilda Rodríguez Orta, directora de la División de querellas, le notificó a la querellada, AMEX-TRS, un documento con relación a la querella *"Q-96-2561"*, en el cual aparece designada como parte querellada la American Express Travel Related Services, ello a tenor de la comunicación cursada por el Lcdo. Padrón el 31 de Julio de 1996, lo que claramente disipa toda duda en cuanto a la parte contra quien estaba dirigida la querella. En el mismo se informaba lo siguiente:

*"Adjunto copia de la querella de referencia la cual estamos refiriendo a la Secretaría Auxiliar de Asuntos Legales, División de Examinadores para dilucidarse en una vista."* 

A tenor de ello, así como de una solicitud de señalamiento de vista peticionado por el Sr. Marrero el 14 de agosto de 1997, el DACO cursó a las partes interesadas, Sr. Marrero y AMEX-TRS, una *"Notificación y Citación"* en la que las convocó para la celebración de una vista el 5 de diciembre de 1997, *"donde se dilucidará la querella de epígrafe [,Q-96-2561]"*. Según surge de su contenido, se le hicieron allí a las partes las advertencias de rigor a tenor de las disposiciones de la LPAU, *supra*, y de las reglas de procedimientos de querellas del DACO. De otra parte, ninguna evidencia existe en el expediente del DACO que las comunicaciones así notificadas a la AMEX-TRS hubiesen sido devueltas por el servicio de correos.

Llegada la fecha de referencia, el DACO celebró la citada audiencia. Toda vez que la querellada AMEX-TRS no asistió ni excusó su incomparecencia, se le anotó la rebeldía y se continuó con los procedimientos. Así, y recibida como fue la prueba que tuvo a bien aportar el querellante, Sr. Marrero, el DACO dictó resolución el 10 de septiembre de 1998, en la que declaró Con Lugar la querella por éste instada, ordenando a la querellada la devolución de la suma $662.00, correspondiente a *"la diferencia entre lo que el querellante pagó y lo que le correspondía según la oferta..."*. Como se ha expuesto, y en atención a una oportuna moción de reconsideración promovida por el Sr. Marrero, el 3 de octubre de 1998 el DACO emitió resolución en reconsideración, ésta a los únicos fines de modificar la suma realmente adeudada por la querellada, haciendo constar de forma clara y precisa que, a tenor de los nuevos cómputos que surgían de las facturas que obraban en el expediente, *"se ordena[ba] a la parte querellada **American Express Travel Related Services Company** a devolver al querellante la suma de $900.00"*. (Enfasis nuestro)

Fue en tales circunstancias, e inconfórme con dicho dictamen, que la AMEX-TRS interpuso el recurso que nos ocupa. Según indicado, en el mismo esencialmente postula que en la tramitación del caso el DACO no actuó conforme a derecho al infringir las disposiciones de la LPAU, *supra*, así como los principios que informan el debido proceso de ley. Esta argumentación la predica, en parte, en su infundada alegación de que se presentaron dos querellas independientes contra personas jurídicas distintas. Por los fundamentos que pasamos a exponer, resolvemos que no le asiste la razón a la querellada en su planteamiento.

## II

En la más correcta disposición de este recurso, debemos comenzar por atender esta última teoría esbozada por la querellada -como veremos, equivocada- de que en el actual recurso enfrentamos dos querellas que versan sobre los mismos hechos, instadas contra dos personas jurídicas distintas. Analicemos el fundamento en el que se apoya la misma, comenzando por el principio mismo del trámite procesal seguido por la querella del caso de epígrafe.

En su recurso, la querellada alega que la acción incoada por el Sr. Marrero, a la que el DACO le asignó el número de querella Q96-2561, ▌ fue instada contra la American Express Company (AMEX-CO), Compañía matriz de la American Express Travel Related Services Company, Inc. (AMEX-TRS), de las que postula que son corporaciones separadas, con distinta personalidad jurídica. Señala, además, que la primera, AMEX-CO, *"no lleva a cabo negocios ni publica anuncios dentro de esta jurisdicción"*. ▌ A tenor, para sustentar su contención, expone en su recurso que el Sr. Marrero, en su carta reseñando los hechos que provocaron esta querella, hizo referencia a que su queja estaba dirigida contra *"American Express Co."*.

Al respecto es preciso observar que si bien es cierto que es esa la primera impresión que causa tal referencia, cabe señalar que ambas corporaciones llevan el apellido *"Company"*, realidad que surge del epígrafe mismo del recurso que consideramos, instado ante nos precisamente por la querellada. Observamos, además, que en el formulario oficial utilizado por el DACO para procesar las querellas de los consumidores, en aquél correspondiente a la querella número *"Q96-2561"* se designó como *"querellado"* a la American Express. Punto.

De otra parte, se desprende de los autos que, al momento en que el DACO notificó a la querellada -- denominada hasta ese momento exclusivamente como American Express,-- de la querella número Q96-2561 instada en su contra, lo hizo a la dirección de AMEX-TRS, P.O. Box 0019-1759, ▌ San Juan, P.R. 00919-1759, quien la recibió y le remitió copia de la misma a sus abogados *"con el propósito de que asumamos su representación[...] con relación a la presente querella"*. ▌ Evidentemente, se sometió así voluntariamente a la jurisdicción del DACO a los efectos de la dilucidación de la querella presentada por el Sr. Marrero. Además, por la dmisión propia ante dicho foro recurrido, *"la AMEX-TRS es una corporación foránea autorizada a llevar a cabo negocios en Puerto Rico que emite las tarjetas American Express y que lleva a cabo todas aquellas funciones administrativas y de cobro que conlleva el expedir la tarjeta American Express"*. A tenor, forzoso resulta concluir que la querellada, AMEX-TRS, fue debidamente notificada de la querella Q96-2561; que los hechos expuestos le informaron debidamente de tal querella instada en su contra, de los cuales surge que sólo a ella podían referirse; y que así lo reconoció, al remitirle copia de la misma a sus abogados con el propósito de que, para todo efecto legal, asumieran su representación en la presente querella. Resulta así a todas luces inmeritoria su argumentación de que no fue debidamente notificada de la querella que dio base al dictamen recurrido. ▌

Por otro lado resulta, evidente, según debidamente aclarado por el DACO, que la referencia a un segundo número de querella, la número Q98-156, en escrito dirigido a la recurrente, AMEX-TRS, respondió a un error de oficina cometido inadvertidamente por la agencia, el que fue por ésta subsanado. Así, no podemos atribuir al error invocado por la recurrente en el dictamen recurrido el alcance por ella pretendido, de que se le juzgó en un

procedimiento administrativo del cual no fue notificada. Como certeramente expone el DACO en su comparecencia ante nos, si bien la resolución recurrida se dictó bajo el número de querella Q98-156, es claro que *"en la situación ante nos se trata de una sola querella, la número Q96-2561[, y que [l]a numeración Q98-156 fue un error de numeración cometido inadvertidamente por la agencia, el cual fue subsanado, pero [que] por el contenido de la resolución [se debe entender] que se trataba de la querella Q96-2561"*. ■■■ A tal conclusión abona el hecho de que, como bien observa la querellada misma, AMEX-TRS, la vista en la que se ventilaron los méritos de la querella instada en este caso, asunto que no está ante nuestra consideración, se celebró el día 5 de diciembre de 1997, lo que resulta una imposibilidad para una querella que hubiese sido presentada en el año 1998, al cual correspondería el número Q98-156. Ello desviste de todo mérito tal argumentación de la recurrente, tratándose a todas luces de una sola querella, la que le fue debidamente notificada, a saber, la número Q-96-2561. Alcanzada tal determinación, consideremos los señalamientos de error imputados al DACO en el presente recurso.

## III

Iniciamos por señalar que, a tenor de lo hasta aquí resuelto, habremos de discutir los errores señalados refiriéndonos exclusivamente a la querellada, AMEX-TRS, ello toda vez que ningún trámite o acción fue tomada por el DACO contra AMEX-CO. De otra parte, se hace menester tener presente que fue contra AMEX-TRS que se instó y notificó la única querella presentada por el Sr. marrero, la que fue resuelta por el DACO mediante resolución emitida el 10 de septiembre de 1998, modificada en reconsideración el subsiguiente 3 de octubre, y que la misma lleva el número Q96-2561. Con este trasfondo, consideremos inicialmente los méritos del señalamiento de error imputado por la AMEX-TRS, mediante el cual aduce que el DACO le violentó sus derechos al haber infringido las disposiciones de la LPAU, *supra*, así como aquellos preceptos que informan un debido proceso de ley, cuando se adjudicó por el DACO la querella *"Q98-156"*, alegadamente *"sin haberse notificado la misma ni la vista administrativa del 5 de diciembre de 1997 a que hace referencia la resolución del 10 de septiembre de 1998,"* ■■■ los que surgen de las secciones 3 y 3.9 del referido estatuto. Así, éstas respectivamente disponen, en lo pertinente, que:

*"[e]n todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:*

*(a) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.*

*(b) Derecho a presentar evidencia.*

*(c) Derecho a una adjudicación imparcial.*

*(d) Derecho a que la decisión sea basada en el expediente, 3 L. P. R. A. sec. 2151,"*

y que en la citación a la vista se consignará en tal notificación

*"(a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.*

*(b) Advertencia de que las partes podrán comparecer asistidas de abogados, pero no estarán obligadas a así ser representadas, incluyendo los casos de corporaciones y sociedades.*

*(c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.*

*(d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción.*

*(e) Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista.*

*(f) Advertencia de que la vista no podrá ser suspendida. 3 L.P.R.A. sec. 2159."*

Analizado dicho planteamiento a la luz de los documentos que obran en autos, observamos que a la AMEX-TRS se le participó de todas las instancias del proceso, a través del cual ninguna controversia levantó en cuanto a su relación comercial con el Sr. Marrero. Así, debidamente notificada como fue de la querella presentada en su contra en junio de 1996, y habiéndose procurado representación legal, surge que ninguna alegación responsiva formuló a la misma. De igual forma advertida, en febrero de 1997, de que su caso había sido referido para vista, fue notificada el subsiguiente noviembre de una vista a celebrarse en diciembre, en la que se dilucidarían los méritos de la querella así instada. Sin embargo, optó por no comparecer, en cuya virtud le fue debidamente anotada la rebeldía. A tenor, y sin que mediara posición de parte interesada, el DACO emitió su final resolución en octubre de 1998, la que modificó posteriormente para atemperarla a la prueba aportada por el recurrido, Sr. Marrero. Todo ello, unido a la realidad de que sólo existe una querella en el DACO; de que la numeración Q98-156 fue un error de dicha agencia administrativa al momento de notificar su resolución final y de la ausencia total de prueba por parte de la AMEX-TRS que acredite su aseveración de que *"el Sr. Marrero instó una segunda querella [en su] contra"*, nos lleva a concluir que su señalamiento, respecto a las infracciones inputadas al DACO, queda desvestido de todo mérito y torna en frívolo, en su totalidad, el recurso que consideramos. Basta con señalar que el debido proceso de ley que enarbola AMEX-TRS cómo fundamento de revocación no es un molde riguroso que se da en el abstracto, toda vez que su naturaleza es esencialmente circunstancial y pragmática. *Pueblo v. Andréu González*, 105 D.P.R. 315, 320 (1970; *Otero Fernández v. Alguacil*, 116 D.P.R. 733, 742 (1985); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. ___ (1993), **93 J.T.S. 88.**

De otra parte, su acomodaticia posición alegando no haber sido notificada de ciertos documentos, cuando surge del expediente que todos fueron enviados a la misma dirección en la que AMEX-TRS recibió la querella original --de la que no se ha refutado que pertenezca a AMEX-TRS-- no mejora su posición. A ello abona demás, el hecho de que del expediente del DACO no surge que tal correspondencia hubiese sido recibida devuelta. A tenor, le es de aplicación la presunción establecida en la Regla 16(24) de las de Evidencia, de que una carta dirigida y cursada por correo debidamente fue recibida en su oportunidad, Regla 16 (24), 32 L.P.R.A. Ap. IV, R. 16(24), presunción que la AMEX-TRS no ha controvertido. Concluimos, a tenor, que al darle curso y tramitar la actual querella hasta su final resolución, el DACO satisfizo los preceptos que encarnan el debido proceso de ley, por lo que no se cometió tal error imputado por la aquí recurrente.

Dirigiendo nuestra atención ahora al planteamiento de la AMEX-TRS a los efectos de que la querella instada en su contra debió haber sido desestimada *"por prescripción" "ya que ha transcurrido un término irrazonable, en exceso de dos años, desde que el querellante presentó su querella sin que el DACO haya adjudicado la misma ni exista justa causa para tal dilación"*, ▐ el mismo también es inmeritorio. Veamos.

Las disposiciones pertinentes de la LPAU, *supra*, estatuto que gobierna, en principio, los procedimientos ante las agencias administrativas, de una parte proveen que *"[t]odo caso sometido a un procedimiento adjudicativo ante una agencia deberá ser resuelto dentro de un término de seis (6) meses, desde su radicación, salvo circunstancias excepcionales"*. Sec. 3.13 (g), 3 L.P.R.A. sec. 2163 (g). Una vez iniciado el trámite administrativo, la sección 3.14 establece, en lo que nos concierne, que *"[u]na orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada"*. 3 L.P.R.A. sec. 2164.

Interpretando el alcance de los términos allí señalados, el Tribunal Supremo ha resuelto que cuando los

mismos pueden ser prorrogados, ya sea por justa causa o porque media el consentimiento de las partes, su mandato tiene que ser considerado como directivo y no jurisdiccional. *J. Exam. Tec. Méd. v. Elías et al,* 144 D.P.R. ___ (1997), **97 J.T.S. 141**, pág. 322. En su virtud, una vez puesto en marcha el proceso administrativo, frente al incumplimiento de una agencia con tales términos directivos, el único remedio disponible a una parte es incoar un recurso de *mandamus* para solicitar que los tribunales ordenen a la agencia resolver el caso que tiene ante su consideración. *id.,* pág. 323.

Al considerar la contención de la AMEX-TRS a la luz de la reseñada normativa, preciso es observar que no enfrentamos un planteamiento de prescripción, como erradamente lo aborda dicha parte, sino uno de alegada falta de jurisdicción, frente al cual se postula que se debe desestimar la querella instada en su contra. Considerada ahora tal solicitud de remedio a la luz de lo antes indicado, evidente resulta su improcedencia. En primer lugar, y como se ha expuesto, el único remedio disponible a la AMEX-TRS lo era el *mandamus*, y no la desestimación del recurso, ello asumiendo que se hubiera incurrido por la agencia en la dilación alegada. De otra parte, ante el hecho de que el DACO emitió su resolución final en octubre de 1998, tal realidad torna en extemporáneo el señalamiento de error imputado al respecto por AMEX-TRS.

No habiéndose cometido los errores imputados; ausente error manifiesto o proceder arbitrario por parte de la agencia recurrida; y no habiendo descargado la recurrente su obligación de destruir la presunción de regularidad y corrección de que goza la decisión recurrida, concluimos ahora que resulta procedente denegar la expedición del auto solicitado.

## IV

Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado en el caso de epígrafe.

Lo manda el Tribunal y así lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 134

1. Véase Resolución de 10 de septiembre de 1998, Apéndice del recurso, págs. 6-8.

2. Véase Resolución de 3 de octubre de 1998, Apéndice del recurso, pág. 15.

3. Véase Recurso de Revisión, pág. 4.

4. Ley 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.*

5. Como claramente surge de los autos y fue acreditado por la agencia recurrida, la alegada anomalía no es otra cosa que un error oficinesco del DACO, tratándose en realidad de una misma y única querella de la cual fue notificada la querellante.

6. Véase Carta de 9 de abril de 1996, Apéndice del recurso, págs. 1-2.

7. *Id.,* pág. 2.

8. Véase Carta de 31 de julio de 1999, Apéndice del escrito en oposición, pág. 1.

9. Véase Informe de Investigación, Apéndice del escrito en oposición, pág. 2.

10. Véase Comunicado de 19 de febrero de 1997, Apéndice del Escrito en oposición, pág. 3.

11. Véase Recurso de Revisión, pág. 3.

12. Véase Resolución de 10 de septiembre de 1998, Apéndice del recurso, pág. 7.

13. Véase Resolución en reconsideración, Apéndice del recurso, pág. 15.

14. Tomamos conocimiento judicial de que el número 96 en dicha querella identifica el año en el cual la acción fue promovida, en este caso, por un querellante, el Sr. Marrero.

15. Véase Recurso de Revisión, pág. 3.

16. Esta es la dirección que surge del expediente a la cual han sido notificados a la querellada todos los documentos expedidos por el DACO relativos a esta querella.

17. Véase Carta de 31 de julio de 1996, Apéndice del escrito en oposición, pág. 1.

18. Como se ha indicado, la AMEX-TRS no cuestiona que la dirección postal a la que el DACO le cursó sus comunicaciones, no estuviera asignada a ésta o que, por el contrario, la misma le correspondiera a AMEX-CO.

19. Véase Escrito en oposición, pág. 4.

20. Véase Recurso de Revisión, pág. 5.

21. Véase Recurso de Revisión, expositivo núm. 3, pág. 7. Atendemos este error, aun cuando el recurso imputa éste en el caso *"instado"* contra AMEX-CO, Q96-2561, en virtud de nuestra determinación de que la parte querellada efectivamente en la querella Q96-2561 es AMEX-TRS.