EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Diana M. Umpierre Matos<br><br>  Peticionaria<br><br><br>  v.<br><br><br>Alexis F. Juelle Abello,<br>Clara Inés Mejía Martínez<br><br>  Recurridos | Certiorari<br><br>2019 TSPR 160<br><br> 203 DPR ____ |

Número del Caso:  CC-2019-122


Fecha: 3 septiembre de 2019


Tribunal de Apelaciones:

          Panel XII


Abogados de la parte peticionaria:

      Lcdo. Guillermo De Guzmán Vendrell
      Lcda. Anibelle Sloan Altieri


Abogado de la parte recurrida:

      Lcdo. María Juarbe i Botella


Materia: Derecho de Familia: Las figuras del desacato civil y el
encarcelamiento como medidas coercitivas para asegurar el pago de pensiones
alimentarias a favor de menores de edad.


Este documento constituye un documento oficial del Tribunal Supremo que
está sujeto a los cambios y correcciones del proceso de compilación y
publicación oficial de las decisiones del Tribunal. Su distribución
electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Diana M. Umpierre Matos<br><br>    Peticionaria<br><br>         v.<br><br>Alexis F. Juelle Abello,<br>Clara Inés Mejía Martínez<br><br>    Recurridos | **Núm.** CC-2019-0122 | |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 3 de septiembre de 2019

En esta ocasión, nos corresponde delimitar los contornos de las figuras del desacato civil y el encarcelamiento como medidas coercitivas para asegurar el pago de pensiones alimentarias fijadas a favor de menores de edad. Ese análisis, a su vez, requiere un examen de nuestra jurisprudencia interpretativa previa y su interacción con las disposiciones contenidas en la *Ley Orgánica de la Administración para el Sustento de Menores*. Específicamente, debemos determinar si el Tribunal de Primera Instancia abusó de su discreción al condicionar la excarcelación de un padre alimentante -cuya deuda de pensión se acerca a los dos (2) millones de dólares- al pago de $10,000.00. Ello, luego de que, en repetidas instancias, el propio alimentante ofreciera satisfacer una fracción sustancialmente mayor de la cuantía adeudada para que se le permitiera renovar su pasaporte.

## I.

La Sra. Diana M. Umpierre Matos y el Sr. Alexis F. Juelle Abello contrajeron matrimonio en el año 1991. Durante la vigencia de su matrimonio, procrearon dos (2) hijos, quienes actualmente tienen veintidós (22) y diecisiete (17) años.[1] Asimismo, durante la vigencia del matrimonio, la Sociedad Legal de Gananciales constituida entre ambos generó un caudal sustancial de bienes muebles e inmuebles. En el año 2007, el vínculo matrimonial quedó disuelto y se fijó una pensión provisional de $9,675.00 a favor de los menores de edad. Ante el reiterado incumplimiento del señor Juelle Abello con el pago de esa pensión, el 10 de febrero de 2012, el Tribunal de Primera Instancia emitió una orden de arresto en su contra. En ese momento, el señor Juelle Abello se había trasladado al estado de Florida desde el año 2011.

Luego de varios trámites procesales, el 14 de enero de 2014, el señor Juelle Abello presentó ante el Tribunal de Primera Instancia una *Moción en Solicitud de Orden para Permitir Renovación del Pasaporte*. Mediante ésta, indicó que, en virtud de la orden de arresto que pendía en su contra, estaba impedido de realizar los trámites relativos a la renovación de su pasaporte ante el Departamento de Estado de

---

[1] El hijo del señor Juelle Abello y la señora Umpierre Matos advino la mayoría de edad durante el trámite apelativo de este pleito. Del expediente no surge, sin embargo, que el señor Juelle Abello haya solicitado un relevo de pensión alimentaria ante el Tribunal de Primera Instancia luego de que su hijo adviniera la mayoría de edad. Tampoco surge que este último haya sido incluido como parte en el pleito o haya presentado una solicitud a esos efectos.

los Estados Unidos. El Tribunal de Primera Instancia denegó la solicitud del señor Juelle Abello, advirtiéndole que, como mínimo, debía establecerse un plan de pago de la pensión adeudada previo a considerar su solicitud. En atención a ello, el 29 de enero de 2014, el señor Juelle Abello presentó una *Moción en Cumplimiento de Orden y Ratificando Solicitud de Permiso para Renovar Pasaporte*. En ésta, ofreció pagar una pensión mensual de $3,000.00 a favor de los menores de edad y solicitó el restablecimiento de las relaciones paternofiliales por la vía telefónica. Mediante resolución dictada el 10 de febrero de 2014, el foro primario declaró no ha lugar el plan de pago solicitado y ordenó a la señora Umpierre Matos expresarse sobre el restablecimiento de las relaciones paternofiliales.

Así las cosas, el 23 de mayo de 2014, el señor Juelle Abello presentó una *Moción sobre Deuda* en la que informó que estaba dispuesto a realizar un pago inmediato de $30,000.00 y comprometerse a cumplir con un plan de pago mensual de $3,000.00. La señora Umpierre Matos se opuso a la moción y arguyó que la oferta era absurda en consideración al hecho de que la deuda superaba un millón de dólares. Asimismo, sostuvo que acceder a la solicitud del señor Juelle Abello de renovar su pasaporte a cambio del pago de esa cuantía implicaba permitirle continuar evadiendo la jurisdicción de los Estados Unidos para así eludir el pago de la deuda acumulada y la pensión alimentaria fijada. Evaluados los argumentos de las partes, el foro primario emitió una

resolución declarando no ha lugar la moción presentada por el señor Juelle Abello.

El 22 de agosto de 2014, el señor Juelle Abello acudió nuevamente ante el Tribunal de Primera Instancia mediante un escrito titulado *Moción de Apremio*. Esta vez, informó al tribunal que había recibido una oferta de empleo en Panamá y que necesitaba que se le permitiera renovar su pasaporte para poder aceptarla. A cambio del permiso de renovación de pasaporte, ofreció realizar un pago por el 20% de la deuda acumulada, idear un plan de pago y mantener al día la pensión regular asignada. Por último, arguyó que la deuda acumulada no reflejaba ciertos pagos que había realizado durante el trámite del pleito. El Tribunal de Primera Instancia emitió una resolución mediante la cual declaró no ha lugar la solicitud de renovación de pasaporte, "toda vez que el plan de pago propuesto no es razonable ante la cuantía adeudada". Ap. en la pág. 252. El foro primario razonó que:

> Tomando los hechos particulares del presente caso, le asiste la razón a la demandante. No podríamos acceder a la solicitud del demandado a menos que esté cumpliendo con la pensión establecida, se pague una cantidad sustancial no menor de la mitad de la deuda y se ofrezcan garantías de cumplimiento en cuanto al balance de la otra mitad, que muy bien puede ser con bienes en Puerto Rico.

*Id.*

Concomitantemente a los desarrollos judiciales ante el foro primario, el 19 de febrero de 2015, un Gran Jurado para el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico autorizó la presentación de una acusación

criminal (*indictment*) en contra del señor Juelle Abello por violación a la Sección 228 del Título 18 del Código de los Estados Unidos que penaliza transitar por el comercio interestatal con la intención de evadir una obligación de pensión alimentaria. ("Any person who . . . travels in interstate or foreign commerce with the intent to evade a support obligation, if such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000. . . shall be punished as provided in subsection (c).") 18 USCA sec. 228. *Véase Indictment*, Ap. en la pág. 253.

Con una orden de arresto estatal y una acusación federal en su contra, el 7 de septiembre de 2016, el recurrido presentó una *Solicitud de Revisión de Pensión* en la que solicitó que se le permitiera renovar su pasaporte para poder asistir a los procedimientos y tener la oportunidad de presentar un plan de pago para satisfacer la deuda. El Tribunal de Primera Instancia declaró no ha lugar esta solicitud, explicando que para viajar de Estados Unidos a Puerto Rico no hacía falta un pasaporte. No obstante, luego de varios trámites procesales, el señor Juelle Abello compareció nuevamente para informar al tribunal que se encontraba viviendo en Juriquilla, Querétaro, México. El 15 de noviembre de 2016, el Tribunal de Primera Instancia notificó una *Orden* en la que denegó su solicitud. Se le advirtió que, de cumplir con su obligación alimentaria, el tribunal podría reconsiderar su determinación.

Así las cosas, el señor Juelle Abello continuó compareciendo ante el foro primario insistiendo en su reclamo y ofreciendo pagar parte de la deuda a cambio de que se le permitiera renovar su pasaporte. El 2 de junio de 2017, el Tribunal de Primera Instancia notificó una orden y dispuso que, para que se le permitiera renovar su pasaporte, el señor Juelle Abello tenía que "buscar la manera de hacer un pago sustancial a la deuda". Ap. en la pág. 287. Dictaminó, además, que si éste quería realizar pagos mensuales, podría hacerlo a través de la Administración para el Sustento de Menores (ASUME).

El 1 de junio de 2018, las autoridades federales arrestaron al señor Juelle Abello en México. Luego del arresto, éste fue extraditado al estado de Texas, donde el foro federal acogió su solicitud de traslado al Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico. Conforme a estos desarrollos, la señora Umpierre Matos presentó ante el Tribunal de Primera Instancia una *Moción solicitando se diligencie orden de arresto y encarcelamiento*. El 26 de junio de 2018, el Tribunal de Primera Instancia dictó una orden mediante la cual dispuso lo siguiente:

> Proceda Unidad de Alguaciles a gestionar la localización del demandado, quien aparenta haber sido arrestado por agencias federales y sería trasladado a nuestra jurisdicción a los fines de que se ejecute la orden de arresto.
> Se emite una nueva Orden de Arresto ($1,868,012.50).
> Se señala una vista para el 23 de julio de 2018.

Ap. en la pág. 198.

El 12 de julio de 2018, el Tribunal de Distrito para el Distrito de Puerto Rico celebró una vista de fianza durante la cual le impuso una serie de condiciones al recurrido. Entre las condiciones impuestas, el foro federal dispuso que el señor Juelle Abello no podría disfrutar del beneficio de libertad bajo fianza hasta tanto se presentara ante el Tribunal de Primera Instancia para responder por la orden de arresto que pendía en su contra.

A solicitud del señor Juelle Abello, el Tribunal de Primera Instancia celebró una vista el 14 de agosto de 2018. Durante ésta, el foro primario permitió al peticionario consignar $10,000.00 como condición para ordenar su excarcelación, bajo el apercibimiento de que debía continuar realizando los pagos correspondientes a la pensión adeudada. Así las cosas, y con el fin de que se ordenara su excarcelación, el 20 de agosto de 2018, el señor Juelle Abello presentó una *Moción de consignación* con un cheque de gerente por la suma de $10,000.00. *Véase* Ap. en la pág. 271.

Insatisfecha con esta determinación, la señora Umpierre Matos presentó: (1) una *Moción de reconsideración*; (2) una *Moción para que se haga cumplir orden del Tribunal de Apelaciones en este caso*,[2] y (3) una *Moción solicitando se notifique minuta-orden*. Evaluadas estas mociones, el

---

[2] En ésta, hizo referencia a un dictamen del Tribunal de Apelaciones mediante el cual se le ordenó al señor Juelle Abello satisfacer la suma de $5,000.00 en concepto de honorarios de abogado. La señora Umpierre Matos solicitó al Tribunal que ordenara al señor Juelle Abello cumplir con ese mandato.

6 de septiembre de 2018, el Tribunal de Primera Instancia notificó una orden mediante la cual declaró no ha lugar la reconsideración presentada. En cuanto a la notificación de la minuta-orden, dispuso que, a pesar de que no había emitido una, "en aras de que conste por escrito" . . . emitir[ía] resolución a los efectos de que se excarcelaría al señor Juelle si paga $10,000.00, siendo apercibido de que tenía que seguir pagando la pensión". *Véase Resolución de 4 de septiembre de 2018*, Ap. en la pág. 164. Por último, en cuanto a la moción para que se ordenara el cumplimiento con la orden del Tribunal de Apelaciones relacionada con los honorarios de abogado, el foro primario dispuso que lo procedente era que la señora Umpierre Matos acudiera al foro apelativo intermedio a solicitar los remedios adecuados.

Aún inconforme, el 5 de octubre de 2018, la señora Umpierre Matos presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En éste, planteó que el foro primario había errado al imponer al señor Juelle Abello un pago mínimo de $10,000.00 para que fuera excarcelado cuando la deuda de pensión alimentaria sobrepasaba los $1.8 millones de dólares. Según arguyó, tal determinación constituyó un abuso de discreción y pasaba por alto los desarrollos fácticos del caso. Expresó que el foro primario no había aplicado la doctrina de la "ley del caso" y había permitido al señor Juelle Abello hacer un pago mucho menor al que él mismo había ofrecido pagar en el pasado para que se le permitiera renovar su pasaporte. Ello, según indicó, en detrimento del bienestar

de la menor de edad y en contravención a la casuística relacionada con las pensiones alimentarias en nuestra jurisdicción. Planteó, además, que el foro primario había errado al negarse a hacer cumplir un mandato del Tribunal de Apelaciones que se retrotraía a una sentencia dictada en el año 2012.

El 27 de noviembre de 2018, el Tribunal de Apelaciones notificó una sentencia mediante la cual se negó a revisar la determinación del Tribunal de Primera Instancia de ordenar la excarcelación del señor Juelle Abello a cambio de que éste abonara la cuantía de $10,000.00 a su deuda de pensión alimentaria. Al así proceder, determinó que la imposición de un pago de $10,000.00 era razonable. Destacó que surgía del expediente que, durante todos los años que el señor Juelle Abello había evadido la jurisdicción de Puerto Rico, el Tribunal de Primera Instancia había tomado las medidas a su alcance para viabilizar su regreso. En su sentencia, el Tribunal de Apelaciones subrayó que, al permitir la excarcelación del señor Juelle Abello, el foro primario alcanzó que éste "abonara una cuantía a la deuda de pensión alimentaria, a la vez que le permite reintegrarse a la sociedad". *Sentencia del TA*, en la pág. 13, Ap. en la pág. 36.

De esta manera, el foro apelativo intermedio razonó que la imposición de condiciones adicionales para su excarcelación pudo haber sido contraproducente y que el propósito era garantizar el cumplimiento con el pago de la pensión alimentaria. Por último, el foro apelativo intermedio

señaló que, dado que la señora Umpierre Matos no había presentado la regrabación de la vista celebrada, no tenía constancia de lo allí ocurrido, por lo que no estaba en posición de intervenir con la determinación del foro primario. En atención a ello, se negó a expedir el recurso en cuanto a ese aspecto de la determinación recurrida.[3] La solicitud de reconsideración presentada por la señora Umpierre Matos fue declarada no ha lugar.

Insatisfecha con el dictamen del Tribunal de Apelaciones, la señora Umpierre Matos acudió a este Tribunal mediante un recurso de *certiorari*. En éste, planteó que el Tribunal de Apelaciones había errado al negarse a revisar la determinación del foro primario de permitir la excarcelación del señor Juelle Abello. Según arguye, el dictamen del Tribunal de Primera Instancia es contrario a la política pública que impera en nuestro ordenamiento relacionada con la importancia del pago de las pensiones alimentarias a favor de menores de edad. Destaca que, al ordenar la excarcelación del señor Juelle Abello a cambio del pago de $10,000.00, el foro primario ignoró los desarrollos previos del caso.

La señora Umpierre Matos señala, además, que la controversia planteada ante el Tribunal de Apelaciones era una de estricto derecho; a saber, "si un tribunal como cuestión de derecho puede imponerle a un padre alimentante

---

[3] En cuanto al señalamiento de error relacionado con los honorarios de abogado, el Tribunal de Apelaciones rechazó la negativa del foro primario a dar cumplimiento a su mandato, por lo que revocó ese aspecto de la orden objeto de revisión.

deudor para su excarcelación, una cantidad menor a la que el propio deudor había ofrecido pagarles a sus hijos expresando que tenía el dinero disponible para realizar el pago". *Certiorari*, en la pág. 26. En atención a ello, sostiene la regrabación de la vista era innecesaria al momento de evaluar la corrección del dictamen recurrido.

Evaluados los argumentos esgrimidos por la señora Umpierre Matos en su *certiorari*, el 29 de marzo de 2019 emitimos una resolución mediante la cual ordenamos al señor Juelle Abello, en un término de quince (15) días, comparecer y mostrar causa por la cual no debíamos expedir el recurso presentado para revocar a los foros inferiores. Al día de hoy, el señor Juelle Abello no ha comparecido ante este Tribunal ni ha solicitado prórroga para comparecer. Ciertamente, esa incomparecencia es consistente con la dejadez e indiferencia exhibida por el señor Juelle Abello durante el transcurso del presente pleito. Procede, pues, determinar si el Tribunal de Primera Instancia erró al permitir la excarcelación de un deudor alimentario a cambio de una cuantía sustancialmente menor a la ofrecida por éste en instancias previas.

## II.

En nuestro ordenamiento, la obligación de satisfacer las pensiones alimentarias a favor de menores de edad está revestida del más alto interés público. *Díaz Ramos v. Matta Irizarry*, 198 DPR 916 (2017); *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 703 (2014); *Ríos v. Narváez*, 163 DPR 611

(2004). Como foro judicial y máximo garante de los derechos sociales de nuestra ciudadanía, nos compete tutelar ese derecho y asegurar el cumplimiento con las obligaciones que derivan del deber de los progenitores de alimentar a sus hijos menores de edad. Ello, puesto que un reclamo de alimentos se fundamenta en el derecho a la vida consagrado en la Sección 7 del Artículo II de nuestra Constitución. Const. ELA Art. II, Sec. 7. *Véase Díaz Ramos v. Matta Irizarry*, 198 DPR en la pág. 923; *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728 (2009); *Franco Restro v. Rivera Aponte*, 187 DPR 137, 153 (2012); *McConnell v. Palau*, 161 DPR 734 (2004); *Argüello v. Argüello*, 155 DPR 62 (2001); *Chévere v. Levis*, 150 DPR 525, 533 (2000).

A tenor con esto, hemos sido contundentes al destacar que:

> [E]l derecho de los hijos a recibir alimentos, y la correlativa obligación de los padres a darlos cuando corresponda, tienen su génesis en el derecho natural, en los lazos indisolubles de solidaridad humana y de profunda responsabilidad de la persona por los hijos que trae al mundo, que son valores de la más alta jerarquía ético-moral y que constituyen una piedra angular de toda sociedad civilizada.

*Argüello*, 155 DPR en la pág. 69 (citas omitidas).

Estatuariamente, la obligación de proveer alimentos está regulada por nuestro Código Civil. En cuanto a las obligaciones de los progenitores hacia sus hijos, el Artículo 153 de ese cuerpo legal establece que:

> El padre y la madre tienen, respecto de sus hijos no emancipados:
>     (1) El deber de alimentarlos, tenerlos en su compañía, educarlos e instruirlos con arreglo a su

fortuna, y representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho.
(2) La facultad de corregirlos y castigarlos moderadamente o de una manera razonable.

31 LPRA sec. 601.

De otra parte, el Artículo 143 regula todo lo relativo a las pensiones alimentarias entre parientes y dispone que:

Están obligados recíprocamente a darse alimentos, en toda la extensión que señala la sec. 561 de este título:

(1)  Los cónyuges.
(2)  Los ascendientes y descendientes.
(3)  El adoptante y el adoptado y sus descendientes.

Los hermanos se deben recíprocamente aunque sólo sean uterinos, consanguíneos o adoptivos los auxilios necesarios para la vida, cuando por un defecto físico o moral, o por cualquier otra causa que no sea imputable al alimentista, no puede éste procurarse su subsistencia. En estos auxilios están, en su caso, comprendidos los gastos indispensables para costear la instrucción elemental y la enseñanza de una profesión, arte u oficio.

31 LPRA sec. 562.

Al interpretar estas disposiciones, hemos dictaminado que la obligación alimentaria que emana del Artículo 153 es una ínsita al ejercicio de la patria potestad que presupone que el alimentista menor de edad se encuentra bajo la custodia del padre alimentante. *Chévere v. Levis*, 150 DPR 525, 534 (2000). Por ello, se trata de una obligación que "está incorporada al conjunto más amplio de deberes y derechos que representa la patria potestad, entre los cuales se encuentra el deber de convivir con los hijos, alimentarlos en su mesa, educarlos, guiarlos y representarlos". *Id.*

Por otro lado, en lo que concierne a la obligación alimentaria consignada en el Artículo 143, hemos determinado que ésta se refiere a aquellos casos en que, a diferencia de la obligación que deriva de la patria potestad, esta obligación depende de la condición económica del padre alimentante. Se distingue, además, en que la obligación es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente. *Rodríguez Amadeo v. Santiago Torres*, 133 DPR 785, 792 (1993). Por tal razón, el deber de un padre o madre no custodio de proveer alimentos surge precisamente de la relación filial y se origina al momento en que la paternidad o la maternidad queda legalmente establecida. En aquellos casos en los que el menor de edad que recibe una pensión adviene la mayoría de edad, la obligación del padre o madre alimentante no cesa hasta tanto un tribunal decrete un relevo de pensión. *Véase Valencia, Ex parte*, 116 DPR 909, 916 (1986); 8 L.P.R.A. sec. 518.

Al margen del articulado que sirve de base al derecho a recibir alimentos de los hijos menores de edad, hemos destacado que el mismo está "destinado a proteger la supervivencia de la persona, su desarrollo biológico y su formación, a fin de que ésta pueda insertarse activamente en la sociedad y paralelamente generarse la oportunidad de concretar su proyecto de vida que comprende la realización de la persona en el ámbito material y espiritual". *Díaz Ramos v. Matta Irizarry*, 198 DPR 916, 923 (2017) (*citando a* C.G. González Fuentes, *Alimentos: el derecho de alimentos desde la*

*perspectiva de los derechos fundamentales*, Proyecto de Mejoramiento de los Servicios de Justicia de Perú, 2007, en la pág. 15).

**III.**

Como imperativo constitucional, el encarcelamiento por deudas no está disponible en nuestra jurisdicción para vindicar intereses primordialmente privados. *Viajes Lesana, Inc. v. Saavedra*, 115 DPR 703, 709 (1984). Hemos reconocido, sin embargo, que la obligación de proveer alimentos es de tal jerarquía y está revestida de tanto interés público que el encarcelamiento por deuda mediante el desacato civil en casos de alimentos figura como una excepción a la prohibición constitucional contenida en la Sección 11 del Artículo II de nuestra Constitución. Const. P.R., Art. II, Sec. 11. Véase *Viajes Lesana, Inc., 115 DPR en la pág. 709*; *Álvarez v. Arias*, 156 DPR 352, 372 (2002). Según hemos establecido, esta excepción nace justamente "por el valor público que la permea. Más que forzar el pago de una deuda de lo que se trata en esos casos es de obligar al descargo de una responsabilidad de mayor rango . . .". *Viajes Lesana, Inc.*, 115 DPR en la pág. 709.

Al evaluar las contadas excepciones por las cuales la prohibición constitucional de encarcelamiento por deudas ha de ceder ante el interés público hemos destacado que "[l]a tabla de valores de la comunidad concernida es la que provee la clave. Si una obligación privada tiene un carácter tan acentuado de deber social que lo segundo ahoga o sobrepasa

lo primero, como en el caso de pensiones alimenticias, la vía del apremio personal puede estar disponible". *Id.* Es decir, el análisis requiere examinar si el deber social de la obligación sobrepasa su carácter privado. De ahí que, "a lo largo de nuestra historia jurídica sólo hemos reconocido una excepción a la prohibición al encarcelamiento por deudas, y ello en una situación revestida del más alto interés público: los casos de alimentos". *Díaz Aponte v. Comunidad San José, Inc.*, 130 DPR 782, 803 (1992).

Conviene aclarar, sin embargo, que el encarcelamiento que resulta del incumplimiento con una obligación de satisfacer alimentos se decreta propiamente en virtud de la resistencia del alimentante a cumplir con una orden judicial y no por el hecho de que éste adeude una cuantía determinada de dinero. *Véase Viajes Lesana, Inc.*, 115 DPR en la pág. 709. Así, hemos razonado que una orden concediendo alimentos es simplemente "un medio de hacer cumplir un deber". *Id.* Es la figura del desacato civil, pues, la que provee un mecanismo asequible para lograr el encarcelamiento de un alimentante que ha incumplido con las órdenes judiciales imponiéndole un deber de proveer alimentos. En esos casos, el mecanismo de desacato civil procura garantizar el cobro de las pensiones atrasadas. Véase *Rodríguez Aviles v. Rodríguez Beruff*, 117 DPR 616, 626-27 (1986); *Otero Fernández v. Alguacil*, 116 DPR 733 (1985).

En nuestra jurisdicción, el desacato civil figura como un mecanismo que tienen a su disposición los foros judiciales

para obligar el cumplimiento con sus órdenes. *Díaz Aponte*, 130 DPR en la pág. 804. A diferencia del desacato criminal, el desacato civil tiene un propósito reparador y no punitivo. Esta distinción resulta de singular importancia, "ya que es precisamente la naturaleza reparadora del desacato civil lo que ha dado paso a que se le reconozca como excepción a la prohibición constitucional contra el encarcelamiento por deuda en los casos de alimentos". *Id.* en la pág. 805. Al examinar las diferencias entre el desacato criminal y el desacato civil y evaluar la naturaleza reparadora de este último como vehículo para asegurar el cumplimiento con las obligaciones relativas a los alimentos de menores, hemos afirmado lo siguiente:

> En el desacato civil **se impone en la sentencia una penalidad por término indefinido, efectiva hasta tanto el demandado cumpla con su obligación primaria, de pasar alimentos en un caso como el de autos.** Como se ha indicado, el propósito esencial de tal clase de sentencia es el de beneficiar al otro litigante, y promover sus intereses privados, ya que el demandado tiene la llave de las puertas de la prisión en virtud del cumplimiento de su obligación principal y personal, y en esa forma se le da una oportunidad a la parte querellante para obtener el remedio o el resarcimiento que ella realmente interesa. La sentencia en un desacato civil no es punitiva, y la imposición de la pena no es su finalidad primordial. **La pena por un término indefinido sirve solamente de medio para el logro de la finalidad esencial del cumplimiento de la orden original, en beneficio del otro litigante.**

*Pérez v. Espinosa*, 75 DPR 777, 781 (1954)(énfasis suplido).

Como se indicó, es el interés apremiante del Estado por proteger los derechos de los alimentistas menores de edad lo que sirve de base para que el desacato civil y el

encarcelamiento inherente a éste figuren como herramientas que los tribunales tienen a su disposición para hacer cumplir las obligaciones alimentarias. No obstante, hemos aclarado que el desacato civil, "por ser de naturaleza reparadora y no punitiva debe utilizarse con prudencia, por la privación de libertad que conlleva, y limitado a aquellos casos en que hubiera una desobediencia voluntaria y obstinada a una orden o sentencia concediendo alimentos y en que la continuada encarcelación del desacatador pueda surtir los efectos de dar al alimentista la reparación necesaria". *Sosa Rodríguez v. Rivas Sariego*, 105 DPR 518, 522 (1976).

De lo anterior se desprende que el encarcelamiento que puede resultar de un procedimiento de desacato civil por el incumplimiento con una deuda de pensión alimentaria responde al poder de *parens patriae* del Estado y al profundo interés público y social de que los dictámenes en casos de alimentos sean cumplidos a cabalidad. *Guzmán Vega v. Piñero Piñero*, 91 DPR 704 (1965). Por tal razón, figura como un medio coercitivo a través del cual los tribunales hacen cumplir sus órdenes con el único fin de proporcionarle al menor de edad los alimentos debidos. *Sosa Rodríguez*, 105 DPR en la pág. 521; *Espinosa v. Ramirez, Alcaide de Cárcel, 72 DPR 901, 905 (1951).* Consiguientemente, la reclusión indefinida de un alimentante incurso en desacato civil que tiene la capacidad económica para satisfacer sus obligaciones alimentarias constituye un vehículo adecuado para lograr el pago de las pensiones adeudadas. *Pérez*, 75 DPR en la pág. 781.

Dada la naturaleza reparadora del desacato civil, la extensión de la encarcelación depende de la eficacia de ésta como instrumento para dar al alimentista la reparación necesaria. Es decir, la encarcelación procura que el alimentante cumpla con su obligación y pague al alimentista las pensiones alimentarias adeudadas. Por tal razón, hemos reconocido que, en aquellos casos en los que el alimentante esté impedido de satisfacer la deuda alimentaria, la encarcelación indefinida podría ser detrimental para los mejores intereses de los alimentistas menores de edad, puesto que le imposibilitaría al deudor obtener los medios económicos para cumplir con su obligación. *Véase Sosa Rodríguez*, 105 DPR en la pág. 522; *Rivera v. Torres*, 56 DPR 583 (1940); *Quiñones v. Corte*, 54 DPR 189 (1939).

En atención a esta realidad, la *Ley Orgánica de la Administración para el Sustento de Menores*, Ley Núm. 5 de 30 de diciembre de 1986, 8 LPRA, sec. 501 *et seq.*, incorpora el desacato civil "como uno de los mecanismos para compeler al cumplimiento de las órdenes emitidas por el Tribunal, las emitidas por el Administrador o el Juez Administrativo y para hacer efectiva cualquier orden de pensión alimentaria para beneficio de un o una menor de edad". 8 LPRA sec. 529. A esos efectos, la referida legislación fija los parámetros para la reclusión de un alimentante incurso en desacato. En particular, la Ley contempla tanto la reclusión carcelaria como domiciliaria como medidas coercitivas para asegurar el pago de las pensiones alimentarias. *Id*. En cuanto a la

reclusión domiciliaria, el inciso (6) del Artículo 31 preceptúa lo siguiente:

> 6. El Tribunal podrá ordenar la reclusión domiciliaria de la parte alimentante en los casos en los que: (a) **por primera vez la encuentre incursa en desacato por haber incumplido una orden de pensión alimentaria**, (b) **la deuda sea igual o menor a seis (6) meses del pago de pensión corriente o aunque mayor a los referidos seis (6) meses, si la misma responde en más de un cincuenta (50) por ciento a una deuda por retroactivo**, (c) **la persona nunca ha tratado de evadir la jurisdicción del Tribunal para incumplir su obligación alimentaria** y (d) acepta cumplir las condiciones siguientes:
>     (1) proveer la pensión alimentaria de conformidad con los términos de la orden de pensión alimentaria;
>     (2) cumplir con las condiciones de pago que el Tribunal establezca para el saldo de la deuda;
>     (3) contar con una conexión telefónica en la residencia donde cumplirá la reclusión domiciliaria, si es que así se lo requiere el Departamento de Corrección;
>     (4) abonar el importe que el Departamento de Corrección le cobre por concepto del grillete que necesita para cumplir su reclusión domiciliaria, excepto cuando el Tribunal de Primera Instancia determine lo contrario;
>     (5) realizar las funciones y labores propias de su empleo; o de estar desempleada:
>         (i) realizar gestiones afirmativas encaminadas a conseguir empleo o alguna fuente de ingresos, o
>         (ii) participar en el programa de trabajo que le asigne el Departamento de Corrección a cambio de percibir como pago la misma cantidad que se le asigna a los confinados que prestan labores en algún programa del Departamento de Corrección;
>     (6) cumplir con las condiciones que le imponga el Departamento de Corrección; y
>     (7) cumplir con todas las condiciones que el Tribunal tuviere a bien imponer para lograr el cumplimiento de la orden.

8 LPRA sec. 529 (énfasis suplido).

De lo anterior surge que la reclusión domiciliaria, si bien figura como la alternativa preferente, está ideada para

aquellos casos en los que: (1) sea la primera vez que el alimentante incumple; (2) el alimentante no haya evadido la jurisdicción del tribunal para eludir sus obligaciones, y (3) la deuda no sea una sustancial. Aún en esos casos, la propia Ley dispone que "[l]a reclusión domiciliaria se extenderá hasta la fecha en la que la parte alimentante salde la deuda por concepto de pensión alimentaria atrasada o hasta la fecha en la que el Tribunal lo estime razonable en atención a la cantidad que la parte alimentante haya abonado a la deuda". *Id.* En aquellos casos en los que el alimentante incumpla con las condiciones impuestas como parte de la reclusión domiciliaria, o cuando ésta no sea ordenada preferentemente, procederá decretar la reclusión carcelaria. *Véase id.*

## IV.

En el presente caso, la contención principal de la peticionaria es, en esencia, que el Tribunal de Primera Instancia actuó de forma irrazonable y abusó de su discreción al permitir la excarcelación del señor Juelle Abello requiriendo únicamente el pago de $10,000.00. Según aduce, tal determinación no sólo es improcedente en Derecho, sino que también es contraria a las determinaciones previas del foro primario relacionadas con la cuantía que el señor Juelle Abello debía satisfacer para que se levantara la orden de arresto que pendía en su contra y, consiguientemente, se le permitiera renovar su pasaporte ante el Departamento de Estado.

Así, la señora Umpierre Matos sostiene que lo procedente en Derecho era condicionar la excarcelación del señor Juelle Abello al pago de una cuantía mayor que guardara mejor relación con la deuda millonaria que había resultado en su orden de arresto. Específicamente, solicita que revisemos los dictámenes recurridos y para que se ordene al recurrido satisfacer el 20% de la deuda que ya había ofrecido pagar ante el foro primario. También solicita que se establezca un plan de pago consistente con los ofrecimientos previos del señor Juelle Abello; a saber, de $4,000.00 mensuales.

En primer lugar, resulta preciso reiterar que, en múltiples ocasiones, el señor Juelle Abello ofreció al Tribunal de Primera Instancia abonar cuantías sustanciales a la deuda de pensión alimentaria debida a sus hijos menores de edad. De los hechos surge que, en al menos tres ocasiones, el foro primario rechazó ofertas del señor Juelle Abello mediante las cuales se comprometió a pagar: (1) $30,000.00; y (2) el 20% de la cuantía adeudada. Según se indicó, en agosto de 2014, el Tribunal de Primera Instancia condicionó el permiso para renovar el pasaporte del señor Juelle Abello al pago de una cantidad sustancial de la deuda no menor de la mitad. En aquel momento, la mitad de la deuda sobrepasaba el medio millón de dólares.

A pesar de lo anterior y de la actitud obstinada y contumaz del señor Juelle Abello de evadir la jurisdicción del tribunal e incumplir con sus obligaciones alimentarias, una vez el foro primario adquirió autoridad sobre éste e hizo

uso del mecanismo coercitivo de la encarcelación, procedió a ordenar -inexplicablemente- su liberación a cambio del pago ínfimo de $10,000.00. Dicho proceder, sin lugar a dudas, constituye un abuso de discreción que no solamente se aparta de las determinaciones previas de ese foro sino que, además, contraviene la política pública que informa el deber de todo padre de proveer alimentos a sus hijos menores de edad. Ciertamente, las ofertas del señor Juelle Abello durante el trámite del pleito revelan que éste tenía la capacidad económica para abonar a la deuda una cuantía mayor a la ordenada por el foro primario. De hecho, surge del expediente que el tribunal de instancia rechazó esas ofertas por entender que eran insuficientes y no atendían adecuadamente las necesidades económicas y los intereses de los menores de edad. Ello, en atención a la magnitud de la cuantía adeudada.

De otra parte, también surge de los hechos que el señor Juelle Abello evadió extendidamente la jurisdicción de este Tribunal con el propósito de eludir el pago de las pensiones alimentarias fijadas a favor de sus hijos menores de edad. No fue hasta que el señor Juelle Abello fue arrestado por las autoridades federales que el foro primario estuvo en posición de hacer cumplir sus órdenes. El riesgo de que el señor Juelle Abello evadiera nuevamente la jurisdicción de los tribunales, la magnitud de la deuda alimentaria vencida y la evidente capacidad económica de éste para consignar una cuantía significativamente mayor a la que le fue finalmente impuesta demuestran que el foro primario erró al permitir su

excarcelación. Asimismo, el Tribunal de Apelaciones erró al negarse a revisar tal determinación.

Si bien como norma general no debemos intervenir con el ejercicio de la discreción de los tribunales de instancia, el presente caso representa una excepción a esa norma. En el pasado, hemos afirmado que "el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Asimismo, hemos dictaminado que la limitación autoimpuesta de los foros apelativos a intervenir con las determinaciones emitidas por los foros primarios y sustituir el criterio utilizado por éstos en el ejercicio de su discreción ha de ceder ante: (1) actuaciones que demuestren perjuicio o parcialidad; (2) abusos de discreción, y (3) equivocaciones en la interpretación o aplicación de cualquier norma procesal o derecho sustantivo. *Citibank v. ACBI*, 200 DPR 724, 736 (2018); *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Recientemente, determinamos que, en el contexto de remedios de aseguramiento de sentencia, las excepciones que preceden conducen a precisar los contornos de nuestra facultad revisora y su evaluación compele nuestra intervención cuando la determinación del juzgador de primera instancia no se rigió "por el criterio de razonabilidad y adecuacidad, o cuando no considera los intereses de ambas partes según lo requiera la justicia sustancial y las

circunstancias del caso". *Citibank*, 200 DPR en la pág. 736. De igual forma, hemos dictaminado que dicha limitación a revisar las determinaciones discrecionales de los foros primarios "no es óbice para que los foros apelativos revisen estas determinaciones debido a las consecuencias reales que pueden tener las mismas". *Job Connection Center v. Sups. Econo*, 185 DPR 585, 602 (2012).

Tal y como se adelantó, en el caso ante nuestra consideración, resulta forzoso concluir que el Tribunal de Primera Instancia incurrió en un craso abuso de discreción al ordenar la excarcelación del señor Juelle Abello a cambio de una cuantía que ni tan siquiera constituye el uno por ciento (1%) de la deuda alimentaria que éste se ha negado a satisfacer desde mucho antes que se decretara la orden de arresto en su contra en el año 2012. Máxime, cuando del expediente surge que el señor Juelle Abello ofreció satisfacer cuantías mayores para que se levantara la orden de arresto que pendía en su contra y el foro primario no se lo permitió por entender que eran insuficientes.

A tenor con las disposiciones de la *Ley Orgánica de la Administración para el Sustento de Menores*, el Tribunal de Primera Instancia debió haber evaluado las circunstancias particulares de este caso previo a dejar sin efecto la reclusión carcelaria del señor Juelle Abello. Ante la reiterada evasión de nuestra jurisdicción y el incumplimiento de éste con sus obligaciones alimentarias, procedía que su reclusión carcelaria continuara hasta tanto éste satisficiera

un monto sustancial de la deuda y el tribunal fijara todas las condiciones que tuviere a bien para lograr el cumplimiento de la obligación alimentaria. Véase 8 LPRA sec. 529.[4]

Resulta impermisible que, luego de ser arrestado y encarcelado por su repetido incumplimiento con sus obligaciones como alimentante y las órdenes del tribunal, el señor Juelle Abello pueda ser liberado sin tan siquiera haber satisfecho -como mínimo- el veinte por ciento (20%) de la

_____

[4] Conviene destacar que la reclusión como medida coercitiva en casos de alimentos, según estatuida en la *Ley Orgánica de la Administración para el Sustento de Menores* ha sido objeto de varias enmiendas. A esos efectos, la Ley Núm. 212 de 20 de diciembre de 2010, condicionó la reclusión domiciliaria a casos de primer incumplimiento en los que el deudor aceptara participar en un programa de trabajo del Departamento de Corrección, entre otras cosas. En la Exposición de Motivos de dicha ley se reconoció que:

> En los casos en que se ordena el encarcelamiento del deudor el mismo **se mantendrá en cárcel hasta que pague la deuda acumulada o abone una cantidad sustancial que le permita al Tribunal acordar un plan de pago para el balance restante.** Este período de cárcel puede prolongarse hasta seis meses de forma consecutiva, al cabo del cual se excarcela a la persona y se vuelve a citar a otra vista. Si la persona continua en incumplimiento de la orden que fija la pensión, el Tribunal puede volver a ordenar su encarcelamiento hasta que cumpla con el pago de lo adeudado.

Exposición de Motivos, Ley Núm. 212 de 20 de diciembre de 2010 (énfasis suplido).

La Asamblea Legislativa razonó que la medida cumplía "el propósito dual de reducir los costos operacionales por concepto de los confinados que son ingresados a nuestro sistema carcelario y le facilita al confinado el poder percibir un ingreso para abonarlo a la deuda que tenga acumulada". *Id.* Posteriormente, mediante la Ley Núm. 198 de 27 de diciembre de 2016, se estableció la reclusión domiciliaria como alternativa preferente en casos de primer incumplimiento. Ello, en consideración a las mismas preocupaciones de índole fiscal que motivaron la enmienda anterior.

deuda alimentaria debida. Peor aún, al ordenar su excarcelación, el foro primario ni siquiera impuso al señor Juelle Abello las condiciones requeridas para la medida más laxa de reclusión domiciliaria que la *Ley Orgánica de la Administración para el Sustento de Menores* contempla. Según se expuso, esa medida está disponible para aquellos deudores que han sido mucho más diligentes que el señor Juelle Abello en el cumplimiento de sus obligaciones y que, contrario a éste, no han evadido la jurisdicción del tribunal. Tal y como se indicó, incluso en los casos de reclusión domiciliaria, la propia ley condiciona la liberación del alimentante al saldo de la totalidad de la deuda o al pago de una cuantía razonable en proporción al total adeudado.

No podemos perder de vista que, en este caso, el incumplimiento del señor Juelle Abello con su deber de alimentar a sus hijos menores de edad se retrotrae al año 2008, cuando decidió eludir las obligaciones alimentarias que fueron fijadas por un tribunal y, posteriormente, abandonar nuestra jurisdicción. Sin lugar a dudas, el propósito reparador que perseguía la encarcelación del señor Juelle Abello quedó frustrado una vez se le permitió abonar una cuantía inconsecuente de la deuda a cambio de su libertad. Asimismo, el mero apercibimiento por parte del foro primario sobre su deber de continuar realizando los pagos de la pensión resulta insuficiente a la luz del largo historial de evasión e incumplimiento con sus obligaciones que surge del expediente del caso.

Dado el alto interés público del que están revestidas las pensiones alimentarias en nuestro ordenamiento, en casos de desacato civil y encarcelamiento por incumplimiento, los tribunales de instancia deberán cerciorarse de que las medidas coercitivas impuestas al alimentante han servido el propósito de reparar el agravio causado al alimentista. Así, al ordenar la reclusión carcelaria o domiciliaria de un alimentante incurso en desacato por incumplimiento con sus órdenes relacionadas con pensiones alimentarias a favor de menores, deberán adherirse a lo establecido en el Artículo 31 de la *Ley Orgánica de la Administración para el Sustento de Menores*. En consecuencia, deberán tomar en consideración la existencia de un patrón de evasión e incumplimiento, la cuantía adeudada y las garantías de cumplimiento que presente cada caso. Sólo así se vindicarán los intereses que el Estado procura tutelar al proveerle a los tribunales el mecanismo de desacato civil y encarcelamiento como vehículo para asegurar el cumplimiento con las órdenes de pensiones alimentarias dictadas a favor de menores de edad.

En atención a lo anterior, erró el Tribunal de Primera Instancia al permitirle al señor Juelle Abello consignar $10,000.00 para ordenar su excarcelación. Asimismo, erró el Tribunal de Apelaciones al negarse a revisar tal determinación. Conforme a la discusión que precede, lo procedente en Derecho era exigirle al señor Juelle Abello el aporte de una cuantía sustancial de la pensión alimentaria adeudada como condición para su liberación y el

establecimiento de un plan de pago que permita satisfacer la totalidad de la deuda millonaria que pende en su contra.

## V.

Por los fundamentos que anteceden, se expide el auto de *certiorari* presentado y se revoca el dictamen recurrido en lo concerniente a la orden de excarcelación. Se confirma la determinación del Tribunal de Apelaciones relacionada al pago de los honorarios de abogado. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Diana M. Umpierre Matos

    Peticionaria

      v.                **Núm.** CC-2019-0122

Alexis F. Juelle Abello,
Clara Inés Mejía Martínez

    Recurridos


SENTENCIA

San Juan, Puerto Rico, a 3 de septiembre de 2019

    Por los fundamentos que anteceden, se expide el auto de *certiorari* presentado y se revoca el dictamen recurrido en lo concerniente a la orden de excarcelación. Se confirma la determinación del Tribunal de Apelaciones relacionada al pago de los honorarios de abogado. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme a lo aquí resuelto.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Jueza Presidenta Oronoz Rodríguez no intervino.


Sonnya Isabel Ramos Zeno
Secretaria del Tribunal Supremo Interina